No. 2-08-0745     Filed: 7-27-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--2274 |
| TYRON L. PATRICK, | ) ) ) | Honorable George Bridges, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Tyron L. Patrick, was convicted of reckless homicide (720 ILCS 5/9--3(a) (West 2006)) and four counts of failing to report an accident involving injury or death (625 ILCS 5/11--401(b) (West 2006)). On May 16, 2008, he was sentenced to nine years' imprisonment for count I, failing to report an accident involving a death, and five years' imprisonment for counts II through IV, failing to report an accident involving an injury, which were to be served concurrently. He was also sentenced to nine years' imprisonment for the reckless homicide conviction, which was to be served consecutively. In addition, the trial court ordered that defendant was to serve 85% of the reckless homicide sentence. Defendant moved to reduce his sentences on June 10, 2008. On June 24, 2008, defendant filed a pro se motion for appointment of new counsel and a motion for a new trial. The trial court found defendant's pro se motions untimely and would not consider them. On August 1, 2008, the trial court denied the motion to reduce his sentences. Defendant timely appealed.

On appeal, defendant argues that: (1) the State failed to prove all elements of section 11--401(b) of the Vehicle Code (625 ILCS 5/11--401(b) (West 2006)), requiring this court to reduce his convictions on counts I through IV to the lesser included offense of leaving the scene of an accident (625 ILCS 5/11--401(a) (West 2006)); (2) convicting him of four counts of failing to report an accident involving injury or death violated the one-act, one-crime rule, requiring this court to vacate three of those convictions; (3) if we do not reduce his convictions on counts I through IV to the lesser included offense, his extended-term sentence for reckless homicide must be reduced; (4) the order to serve 85% of his sentence must be vacated because the trial court lacked statutory authorization to enter it; (5) the trial court did not comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007), thus warranting a new trial; and (6) the trial court improperly failed to consider his allegations of ineffective assistance of counsel in his two pro se motions filed while his motion to reduce his sentences was pending. We affirm in part, vacate in part, and remand the cause for resentencing.

## I. BACKGROUND

On July 18, 2007, defendant was indicted for several offenses relating to a traffic accident on May 20, 2007, that killed Holly Graham and injured Tiara Langston, Gary Nixon, and Jauqtel Foster. In count I, defendant was charged with failing to report an accident involving the death of Graham pursuant to section 11--401(b) of the Vehicle Code. In counts II, III, and IV, defendant was charged with failing to report an accident involving the injuries of Langston, Nixon, and Foster. Count V charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2006)), but that charge was later nol-prossed by the prosecution. Later, defendant was indicted on a sixth count, reckless homicide, pursuant to section 9--3(a) of the Criminal Code of 1961 (Criminal

Code) (720 ILCS 5/9--3(a) (West 2006)), for driving his vehicle between 91 and 95 miles per hour on a residential street with a 30-mile-per-hour limit.

On February 26, 2008, the jury selection process began. In the presence of 35 potential jurors, the trial court stated:

"I shall at this time touch upon certain, broad fundamental principles of law that apply to all criminal cases, and they specifically apply to the criminal case that is before me and now before all of you. ***

* * *

It is absolutely essential as we select this jury that each of you understands and embraces these fundamental principles and they are: The defendant is presumed innocent of the charge that brings him before you, that the State has the burden of proof, the State must prove the charges here beyond a reasonable doubt, the defendant does not have to prove his innocence, he does not have to testify, he does not have to call any witnesses, he does not have to present any evidence at all. He and his attorneys can simply sit there and rely upon what they believe is going to be the State's inability to prove him guilty beyond a reasonable doubt. And should that happen, you will have to decide this case on the basis of the evidence presented by the State.

The fact that the defendant may not testify in these proceedings is not to be considered by you in any way in arriving at your verdict. ***

* * *

The bottom line however is that under our system of laws, the defendant is not required to prove his innocence. That rests squarely with the State and they must prove the

defendant guilty beyond a reasonable doubt."

The court ultimately impaneled jurors 352, 274, 70, 40, 96B, 307, 149, 330, 96A, 46, 387, and 27. We review the questioning of these jurors only as relevant to our Rule 431(b) analysis.

The court first called the following 12 potential jurors into the jury box: 46, 96A, 149, 307, 288, 64, 387, 312, 330, 96B, 274, and 352. The following ensued:

"THE COURT: You heard me talk about those fundamental principles of law that govern and apply to this case, the fact that the defendant is presumed innocent of the charges here, that the State has the burden of proof, the State has to prove the charges beyond a reasonable doubt, the defendant does not have to prove his innocence, he does not have to testify or call any witnesses. Do you understand and accept those principles?

JUROR #352: Yes, I do.

THE COURT: Do you disagree with any one of those principles?

JUROR #352: No, I don't."

Jurors 70, 40, 96B, 149, 307, 330, 96A, 46, and 387 were asked a question that named the identical principles that were included in Juror 352's question. They responded in a likewise manner.

Juror 274 was asked the following:

"You heard me talk about those fundamental principles of law that apply to all criminal cases, the fact that the defendant is presumed innocent of the charges here, the State has the burden of proof, the State has to prove the charges beyond a reasonable doubt, the defendant does not have to prove his innocence, he does not have to call any witnesses as I indicated earlier. He and his attorney can simply sit there and rely upon what they believe will be the State's inability to prove him guilty beyond a reasonable doubt. Do each of you

understand and accept these principles?"

Juror 274 replied yes and said that he did not disagree with any of those principles.

Juror 27 was asked and answered in the following manner:

"And talking about those principles that govern this case, you heard me indicate that the defendant is presumed innocent, that he doesn't have to call witnesses, he doesn't have to testify or present any evidence. Do you agree with that?

JUROR #27: Yes, I do.

THE COURT: And you promise you will not require him to prove his innocence?

JUROR #27: Yes.

THE COURT: Anything about either of those principles that causes you concern that you may or cannot follow them?

JUROR #27: No.

THE COURT: And you understand that the State has the burden of proof, the State in this case must prove the charges here beyond a reasonable doubt. Do you understand and accept those principles?

JUROR #27: Yes.

THE COURT: Do you have any disagreement at all with them?

JUROR #27: No."

Jurors 177 and 112 were selected as alternate jurors. The court stated:

"Under our system of laws, the State has the burden in [the] case here. They have to prove this charge or the charges here beyond a reasonable doubt. The defendant is presumed innocent. He does not have to testify or call any witnesses. Do both of you understand and

accept those principles?"

The alternates responded "yes," and they responded "no" when asked if they disagreed with any of those principles.

The State first called Langston. In the early morning hours of May 20, 2007, Langston was coming home from a gathering with friends. Graham was driving the car. Nixon and Foster were sitting in the backseat. Langston recalled that she was talking to Foster and heard Nixon say "watch out." Langston then blacked out. She remembered next waking up in Lake Forest Hospital with broken ribs, bruised lungs, and a bruised kidney.

Foster testified that he was seated in the backseat of Graham's car. He did not remember anything after the car traveled toward 12th and Jackson Streets in North Chicago. He did not recall being thrown from the vehicle. He recalled waking up the next day in Condell Medical Center with stitches above his right eye, a broken pelvis, collapsed lungs, and broken ribs.

Nixon testified that he was seated behind Graham. As they approached 12th and Jackson Streets, he told Graham that he loved her and then saw bright lights coming from the left. The next thing he recalled was waking up in Victory Hospital with broken ribs, a cracked pelvis, a punctured lung, and a punctured spleen. Nixon was paralyzed for three days, had two surgeries on his mouth, had split both ears, and had breathing problems.

The parties stipulated that Graham owned the car involved in the crash and that she died as a result of the crash, on May 20, 2007, at age 19.

Lieutenant Richard Theis of the North Chicago police department testified that while on general patrol on May 20, around 12:30 a.m., he observed a black vehicle traveling at a high rate of speed out of the 1800 block of Jackson. The vehicle was bouncing and made a hard right-hand turn

on eastbound 18th Street. Theis followed the vehicle but it was accelerating through a residential area. He radioed for backup. The intersection at 14th and Jackson is offset and Theis could not see the vehicle there. Two other patrol units approached Theis at that intersection. The police vehicles continued north on Jackson and saw what appeared to be an accident scene near 12th Street. Theis observed the black vehicle stopped in the southbound lanes of Jackson. A white car was up against a tree on the parkway. The black vehicle had no occupants. Theis stated that it was about one to two minutes from when he lost sight of the black vehicle to when he arrived at the scene of the accident.

Vernice Wright, defendant's mother, testified that on May 19, 2007, she purchased a black 2007 Monte Carlo and parked it in back of her home in the 1800 block of Jackson. In the early morning hours of May 20, her stepson called her and asked where the Monte Carlo was. Wright, who was out with a friend, drove to her home and saw that the car was gone. She went to see if her other car was in front, and an acquaintance drove up and told her that there was a bad accident up the road and that it looked like her son was there. She went to the scene but was not allowed to verify if her car was there. Police verified that her son was not at the scene.

Officer Donald Florance of the North Chicago police department testified that he responded to Theis's call for backup on the morning of May 20. He met Theis near the intersection of 14th and Jackson, where he observed a cloud of smoke and lights in the distance to the north. The officers continued in that direction and observed the accident scene. The black Monte Carlo had no occupants. Three people were in the white car, a Mercury. On May 7, 2007, Florance was patrolling an area of 22nd Street. He observed defendant standing outside a gray Cadillac. Defendant got into the car and drove off, and Florance followed and activated his lights in order to make a traffic stop.

Defendant began traveling 50 to 60 miles per hour in a 25-mile-per-hour speed zone. Florance pursued but stopped near Green Bay Road, where defendant was accelerating up to 90 miles per hour.

Officer Morris Wade of the North Chicago police department testified that he was assigned to investigate the crash. On May 22, defendant called and spoke to Wade. Defendant asked what kind of charges he would be facing if he turned himself in. Wade informed defendant that he was unsure because the investigation was incomplete. Defendant advised that he would be turning himself in shortly. Wade asked if defendant had gotten medical treatment for any injuries, and defendant stated that he was not hurt. Wade admitted that defendant did not identify himself as the driver of the black vehicle.

Sergeant Salvatore Cecala of the North Chicago police department testified that he was part of the department's accident reconstruction team and was assigned to the May 20 crash. Cecala identified a photograph of the Monte Carlo's driver's deployed air safety bag with blood on it. The manner in which the blood was smeared on the air bag caused Cecala to believe that it could have come only from the driver. He also identified some blood splatter on the rail where a person would climb into the car, near the carpet. Cecala recovered from the front passenger floorboard a purse with identification of Tarielle Walls. Another purse was recovered from the rear driver's-side floorboard. A cell phone was hooked up to the back console. Another cell phone was on the floorboard of the driver's side and another on the floorboard of the passenger side. One phone had a "Monique" nameplate. Based on the skidmarks, Cecala estimated that the Monte Carlo had been traveling at 95 miles per hour.

Dr. Eupil Choi testified regarding Graham's fatal injuries. Kenneth Pfoser, a forensic scientist

with the Northeastern Illinois Regional Crime Laboratory, testified that the DNA from the air bag blood matched defendant's DNA.

Defendant called Tarielle Walls. On the night of May 19, Walls was "partying" with her sisters, Marielle and Monique, and a cousin at the Rainbow Club in Waukegan when they met up with defendant and a man named "D." "D" was a short, dark-skinned man with a low haircut. They left the club in defendant's white Monte Carlo. Defendant was driving and Walls was in the front passenger seat. "D" was in the backseat. They drove to defendant's home in North Chicago. Defendant went inside his home and returned with some car keys. They then got into a new, black Monte Carlo. "D" drove, Walls was in the front passenger seat, and defendant was in the backseat on the passenger side. When they got to 12th and Jackson, a white car pulled out from a stop sign, and "D" swerved but the cars collided. "D" jumped out of the car, defendant spoke to Walls, and then he also left the vehicle. Walls got out of the car with the assistance of a neighbor and sat on the curb until the police came. She denied that the car had been traveling 90 miles per hour. She identified her purse and her sister's purse, which had been recovered from the vehicle.

At the close of evidence, the trial court ruled on jury instructions. The State requested Illinois Pattern Jury Instructions, Criminal, No. 23.05 (4th ed. 2000) (hereinafter IPI Criminal 4th). Defense counsel objected to IPI Criminal 4th No. 23.05 because it differed from the actual charges against defendant, which included the element of failing to provide notice to the police within 30 minutes of leaving the accident scene. The State's response was merely that the IPI instructions often differ. The court ruled that it would provide IPI Criminal 4th No. 23.05.

IPI Criminal 4th No. 23.05 provides:

"A person commits the offense of leaving the scene of an accident involving death or

personal injury when he is the driver of a vehicle involved in a motor vehicle accident resulting in death or personal injury to any person and, with knowledge that an accident has occurred, and with knowledge that the accident involved another person, he fails to immediately stop his vehicle at the scene of the accident and remain there until he has performed the duty to give information and render aid." IPI Criminal 4th No. 23.05.

Defense counsel also objected to IPI Criminal 4th No. 23.06, which provides:

"To sustain the charge of leaving the scene of an accident involving death or personal injury, the State must prove the following propositions:

First Proposition: That the defendant was the driver of a vehicle involved in a motor vehicle accident; and

Second Proposition: That the motor vehicle accident resulted in a death or personal injury; and

Third Proposition: That the defendant knew an accident occurred; and

Fourth Proposition: That the defendant knew that the accident involved another person; and

Fifth Proposition: That the defendant failed to immediately stop his vehicle at the scene of the accident and remain at the scene of the accident until he had performed the duty to give information and render aid.

If you find from your consideration of all of the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all of the evidence that any one of these

propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."  IPI Criminal 4th No. 23.06.

After closing arguments, the trial court admonished the jury that defendant was presumed innocent, that the State carried the burden of proving defendant's guilt beyond a reasonable doubt, that defendant was not required to prove his innocence, that he did not have to testify, and that the jury must not consider the fact that defendant did not testify in arriving at its verdict.  The trial court then read through the remaining jury instructions.  The jury returned guilty verdicts on all charges.

On March 20, 2008, defendant filed a motion for judgment notwithstanding the verdict (n.o.v.) or alternatively for a new trial.  An amended motion was filed on April 10, 2008.  On May 16, 2008, the trial court denied the motion.  The matter continued to sentencing.  After the trial court heard the witnesses and arguments, it sentenced defendant to an extended term of nine years' imprisonment for reckless homicide, a Class 3 offense, and nine years' imprisonment for failing to report an accident involving a death, a Class 2 offense, to be served consecutively.  For each of the three counts of failing to report an accident involving an injury, a Class 3 offense, the trial court sentenced defendant to five years' imprisonment, to be served concurrently.  The court ordered that defendant would serve 85% of the reckless homicide sentence.  Additionally, defendant would serve the two years' mandatory supervised release period for the Class 2 offense and one year for the Class 3 offenses.

On June 10, 2008, defendant filed a motion to reduce his sentences.  On June 24, defendant filed a pro se motion titled "Motion for Appointment of Counsel Outside the Office of the Lake County Public Defender."  Within that motion, defendant challenged the competency of his trial counsel and alleged several instances of ineffectiveness, including the following: (1) counsel did not

inform him that she was licensed; (2) counsel colluded with the State's Attorney's office by advising defendant that if he did not cooperate, there would be additional charges; (3) counsel forgot to bring several large exhibits to the second day of trial; (4) counsel failed to challenge the consecutive sentences; (5) counsel failed to file posttrial motions arguing that the police failed to fingerprint the black car to determine that defendant was not the driver; (6) counsel deprived him of a fair and speedy trial; (7) counsel failed to raise in a posttrial motion that a juror who fell asleep was allowed to continue to serve despite the juror's informing the court of a sleep apnea condition; and (8) counsel failed to present an expert witness on defendant's behalf.

On June 24, 2008, defendant also filed a pro se motion for a judgment n.o.v. or alternatively for a new trial. In that motion, defendant made similar allegations of ineffective assistance of counsel. On June 25, 2008, defense counsel appeared but defendant was not in court. Defense counsel was unaware of the pro se motions. The court stated that it "admonished the Defendant, so [his motions] will not be considered by the Court. [They are] untimely." The court then heard the motion to reduce his sentences. It continued the matter so it could consider the law. On August 1, 2008, the court stated that it believed that it could sentence defendant for both reckless homicide and failing to report an accident because those were two acts. It believed that the first act was the reckless homicide and that the second act was failing to report. The court therefore denied the motion. Defendant timely appealed.

## II. ANALYSIS

On appeal, defendant makes several arguments, some of which the State concedes. We first briefly address those conceded points.

### A. Sufficiency of the Evidence and Lesser Included Offenses

Counts I through IV charged defendant with failing to report the accident within one-half hour of the accident, pursuant to section 11--401(b) of the Vehicle Code. Defendant argues that the State was required to prove that: (1) defendant was the driver of a vehicle involved in the accident; (2) the accident resulted in a death or personal injury; (3) he knew the accident occurred; (4) he knew the accident involved another person; (5) he failed to immediately stop and remain at the scene until he performed his duty to give information and render aid; and (6) he failed to report the accident within one-half hour after the accident, at a nearby police station or sheriff's office. Defendant does not challenge the evidence concerning whether he was the driver, whether the accident involved personal injury or death, whether he knew an accident occurred that involved other people, or whether he failed to stop and remain at the scene. Defendant does argue that the State failed to establish the sixth element: that he failed to report the accident within one-half hour after the accident. Further, he points to IPI Criminal 4th No. 23.07 and IPI Criminal 4th No. 23.08, which include the element of reporting the accident within one-half hour, as evidence that the sixth element was required to be proven and should have been provided to the jury in the instructions. The State concedes that it did not prove this element. Accordingly, defendant argues that we should reverse his four convictions of Class 2 and Class 3 offenses as defined by section 11--401(b) and enter convictions of the lesser included Class 4 offense of leaving the scene of an accident, as defined by section 11--401(a) of the Vehicle Code.

When reviewing the sufficiency of the evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. DeFilippo, 235 Ill. 2d 377, 384-85 (2009). The critical inquiry on review is not simply whether the jury was

properly instructed but whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. People v. Wheeler, 226 Ill. 2d 92, 114 (2007). A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. Wheeler, 226 Ill. 2d at 115.

Section 11--401(a) of the Vehicle Code provides:

"The driver of any vehicle involved in a motor vehicle accident resulting in personal injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to, and in every event shall remain at the scene of the accident until the requirements of Section 11--403 have been fulfilled. Every such stop shall be made without obstructing traffic more than is necessary." 625 ILCS 5/11--401(a) (West 2006).

Section 11--401(b) provides:

"Any person who has failed to stop or to comply with the requirements of paragraph (a) shall, as soon as possible but in no case later than one-half hour after such motor vehicle accident, or, if hospitalized and incapacitated from reporting at any time during such period, as soon as possible but in no case later than one-half hour after being discharged from the hospital, report the place of the accident, the date, the approximate time, the driver's name and address, the registration number of the vehicle driven, and the names of all other occupants of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this paragraph shall be used, directly or indirectly, as a basis for the prosecution of any violation of paragraph (a)." 625 ILCS 5/11--401(b) (West 2006).

Section 11--401(c) provides that any person failing to comply with section 11--401(a) shall be guilty of a Class 4 felony. 625 ILCS 5/11--401(c) (West 2006). Section 11--401(d) provides that any person failing to comply with section 11--401(b) shall be guilty of a Class 3 felony if the accident does not result in the death of any person. If a death is involved, then the person shall be guilty of a Class 2 felony, for which the person, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years. 625 ILCS 5/11--401(d) (West 2006).

In this case, defendant was indicted for violating section 11--401(b), and we agree with the parties that the State failed to present any evidence that defendant failed to report the accident within one-half hour of the accident, which was a required element to support a section 11--401(b) conviction. Further, the State did not address in any arguments defendant's failure to report the accident within one-half hour of the accident. Additionally, the instructions given to the jury did not address this element. Therefore, we reverse those convictions on counts I through IV and enter Class 4 convictions of violating section 11--401(a), the lesser included offense. See People v. Rowell, 229 Ill. 2d 82, 97-98 (2008) (holding that a defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser included offense of the charged crime; reviewing court has authority under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)) to reduce the degree of the offense when the evidence fails to prove beyond a reasonable doubt an element of the greater offense).

### B. One Act, One Crime

Defendant argues that because all four convictions of leaving the scene of an accident arose out of a single physical act, the trial court erred in convicting and sentencing defendant on all four counts. Specifically, defendant argues that his convictions on counts II, III, and IV should be

vacated.  Defendant also argues that although this issue was not raised in the trial court, the plain-error rule permits review.  The State concedes on these points, and we agree.

Whether a defendant was improperly convicted of multiple crimes based on the same act is a question of law, which we review de novo.  People v. Lee, 325 Ill. App. 3d 643, 652 (2001).  An alleged violation of the one-act, one-crime rule is reviewable under the plain-error doctrine because the defendant's convictions and sentences affect his substantial rights.  People v. Carter, 213 Ill. 2d 295, 299 (2004).  Therefore, we agree with the parties that we may review this issue despite the fact that defendant failed to raise it in the trial court.

The supreme court established the one-act, one-crime rule in People v. King, 66 Ill. 2d 551 (1977).  King provided that a criminal defendant may not be convicted of, or sentenced for, more than one offense carved from a single physical act.  King, 66 Ill. 2d at 566.  "Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts."  King, 66 Ill. 2d at 566.  "Act" is intended to mean any "overt or outward manifestation which will support a different offense."  King, 66 Ill. 2d at 566.

In People v. Sleboda, 166 Ill. App. 3d 42, 44 (1988), the defendant was indicted on three counts of leaving the scene of an accident and three counts of reckless homicide.  The defendant was found guilty and was sentenced to concurrent terms of 364 days for each leaving-the-scene-of-an-accident conviction and four years for each reckless homicide conviction.  Sleboda, 166 Ill. App. 3d at 44.  The defendant argued that the trial court erred in entering judgment on three convictions of leaving the scene of an accident under section 11--401(a).[1]  Sleboda, 166 Ill. App. 3d at 57.  The

---

[1]Although section 11--401 has been amended since Sleboda, the changes do not affect the holding in Sleboda.

court agreed, finding that the statute indicated that an individual could be convicted only once for leaving the scene of an accident, since the focus was on remaining at the scene of the accident. Sleboda, 166 Ill. App. 3d at 57-58. The court focused on the fact that section 11--401 requires that the driver fulfill obligations under section 11--403, which refers to " 'persons entitled to information,' " and found that the statute recognizes that there may be several persons injured in an accident. Sleboda, 166 Ill. App. 3d at 58, quoting Ill. Rev. Stat. 1981, ch. 95½, par. 11--403. However, "while there may be several persons injured in an accident, there is only one accident scene at which the driver has a duty to remain." Sleboda, 166 Ill. App. 3d at 58.

We agree with Sleboda. Section 11--403 states that the driver of any vehicle involved in an accident resulting in injury or death to any person shall provide the necessary information to the "person struck or the driver or occupant" of the other vehicle and shall render assistance to any person injured. 625 ILCS 5/11--403 (West 2006). Section 11--403 further states that "[i]f none of the persons entitled to information pursuant to this Section is in condition to receive and understand such information and if no police officer is present, such driver after rendering reasonable assistance shall forthwith report such motor vehicle accident at the nearest office of a duly authorized police authority, disclosing the information required by this Section." 625 ILCS 5/11--403 (West 2006). Further, there is only one accident scene, despite the number of injured or dead, for a defendant to leave. Like in Sleboda, there is no dispute that only one collision occurred in this case and, thus, only one scene from which defendant left. Counts I through IV of defendant's convictions are based on the same physical act of leaving the scene of an accident. Therefore, we agree with the parties and vacate defendant's convictions on counts II through IV, as they violate the one-act, one-crime rule annunciated in King, and we remand the cause for resentencing.

C. Sentencing

Because we agreed with defendant's arguments and reduced his Class 2 (failing to report an accident involving death) and Class 3 (failing to report an accident involving injury) convictions to one Class 4 conviction (leaving the scene of an accident involving a death), we need not address whether the trial court erred in sentencing him to an extended term for reckless homicide, which is a Class 3 offense. Defendant concedes that once we reduce his other convictions to Class 4, the extended term on the reckless homicide conviction is proper because then the reckless homicide is the most serious offense.

Regardless of the extended-term sentence issue, defendant argues that the trial court lacked statutory authority to order that he serve 85% of the reckless homicide sentence. Section 3--6--3(a)(2.1) of the Unified Code of Corrections (730 ILCS 5/3--6--3(a)(2.1) (West 2006)) provides:

"For all offenses *** other than the offense of reckless homicide as defined in subsection (e) of Section 9--3 of the Criminal Code of 1961 committed on or after January 1, 1999, *** the rules and regulations shall provide that a prisoner who is serving a term of imprisonment shall receive one day of good conduct credit for each day of his or her sentence of imprisonment or recommitment under Section 3--3--9. Each day of good conduct credit shall reduce by one day the prisoner's period of imprisonment or recommitment under Section 3--3--9."

Section 3--6--3(a)(2.3) of the Unified Code of Corrections (730 ILCS 5/3--6--3(a)(2.3) (West 2006)) provides:

"The rules and regulations on early release shall provide that a prisoner who is serving a sentence for reckless homicide as defined in subsection (e) of Section 9--3 of the Criminal

-18-

Code of 1961 committed on or after January 1, 1999, \*\*\* shall receive no more than 4.5 days

of good conduct credit for each month of his or her sentence of imprisonment."

Defendant was convicted of reckless homicide pursuant to section 9--3(a) of the Criminal Code,

which applies to individuals who kill using a motor vehicle. 720 ILCS 5/9--3(a) (West 2006). Thus,

defendant is entitled to one day of good-conduct credit for each day of his sentence, pursuant to

section 3--6--3(a)(2.1) of the Unified Code of Corrections. 730 ILCS 5/3--6--3(a)(2.1) (West 2006).

Moreover, subsection (e) of section 9--3 of the Criminal Code has been deleted and has read "blank"

since 2003. The fact that defendant did not raise the issue in the trial court does not mean that the

issue has been forfeited, as a sentence that does not conform to a statutory requirement is void and

may be challenged at any time. See People v. Arna, 168 Ill. 2d 107, 113 (1995). The State concedes

that ordering defendant to serve 85% of the reckless homicide sentence was improper. Accordingly,

we vacate the order imposing that defendant serve 85% of the reckless homicide sentence and we

order that, upon remand, defendant receive one day of good-conduct credit for each day of his

imprisonment, pursuant to section 3--6--3(a)(2.1) of the Unified Code of Corrections.

### D. Rule 431(b)

On a point that is not conceded by the State, defendant argues that the trial court did not

comply with Rule 431(b) requirements during voir dire. Defendant argues that because of the

violation, he is entitled to a new trial. The State argues that the trial court's failure to fully comply

with Rule 431(b) was not so serious that defendant was deprived of a fair trial.

Defendant neither objected at the time of voir dire nor raised this issue in his posttrial motion.

Regardless, we may review a forfeited error under the plain-error rule if either the evidence is so

closely balanced that the jury's verdict may have resulted from the error and not the evidence or the

error was so serious that the defendant was denied a substantial right and thus a fair trial. People v. Calabrese, 398 Ill. App. 3d 98, 119 (2010). We must first determine whether an error occurred. People v. Blair, 395 Ill. App. 3d 465, 467 (2009).

Rule 431(b) provides:

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007.[2]

Here, the trial court addressed each of the four principles when it broadly addressed all potential jurors. In the individual questioning, however, the trial court failed to address the fourth principle, that defendant's failure to testify could not be held against him. Such failure was error.

We next determine whether we may review this forfeited error by determining whether (1) the evidence is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, or (2) the error is so serious that defendant was denied a substantial right and thus

---

[2]Defendant did not object on the fourth principle relating to his right not to testify; therefore, we proceed on the premise that the trial court was required to admonish jurors on all four principles.

a fair trial. <u>Blair</u>, 395 Ill. App. 3d at 467. As the supreme court explained in <u>People v. Herron</u>, 215 Ill. 2d 167, 186 (2005), "the closely balanced evidence prong of the plain-error test guards against errors that could lead to the conviction of an innocent person *** while the substantial rights prong guards against errors that erode the integrity of the judicial process and undermine the fairness of the defendant's trial." Defendant does not argue that the closely-balanced-evidence prong applies but rather argues only that the second prong applies. Defendant relies on <u>Blair</u>, <u>People v. Graham</u>, 393 Ill. App. 3d 268 (2009), and <u>People v. Blanton</u>, 396 Ill. App. 3d 230 (2009), for his position that the trial court's failure to comply with Rule 431(b) was an error so substantial that he was denied a fair trial and that thus reversal is warranted. The State admits that the trial court did not fully comply with Rule 431(b) and thus admits that error occurred. However, the State counters that the plain-error rule does not apply because the trial court's failure to strictly comply with Rule 431(b) does not constitute an error so serious that defendant was denied a fair trial. Thus, the State submits that reversal is not warranted, relying on <u>People v. Glasper</u>, 234 Ill. 2d 173 (2009), <u>People v. Russell</u>, 395 Ill. App. 3d 926 (2009), and <u>People v. Magallanes</u>, 397 Ill. App. 3d 72 (2009).

In <u>People v. Zehr</u>, 103 Ill. 2d 472, 477-78 (1984), the supreme court held that a trial court abused its discretion in refusing defense counsel's request to ask specific questions in <u>voir dire</u>. Rule 431(b) embodies the four principles addressed in <u>Zehr</u> and, prior to the 2007 amendment, required a trial court to ask about the <u>Zehr</u> principles during <u>voir dire</u> only when requested by the defendant. See 177 Ill. 2d R. 431(b). Effective May 1, 2007, Rule 431(b) was amended to impose upon the trial court a <u>sua sponte</u> duty to ask jurors about the <u>Zehr</u> principles.

<u>Glasper</u> dealt with the pre-2007 version of Rule 431(b), in which the defendant was required to ask the court to question the jurors about the <u>Zehr</u> principles during <u>voir dire</u>. Defense counsel

in Glasper asked the court to question the jurors and specifically reminded the court to ask about the defendant's right not to testify. Glasper, 234 Ill. 2d at 188. The court responded that it did not need to ask about that because that principle would be given to them later. Glasper, 234 Ill. 2d at 188. The court provided all venire members the four Zehr principles but, when questioning individual venire members, the court did not ask them if they accepted that the defendant's decision not to testify could not influence their verdict. Glasper, 234 Ill. 2d at 189.

The question in Glasper was whether the trial court's error in violating a supreme court rule required the reviewing court to presume prejudice and automatically reverse the defendant's conviction, or whether the error was subject to harmless-error analysis. Glasper, 234 Ill. 2d at 189. The supreme court stated that the violation of a supreme court rule does not mandate reversal in every case. Glasper, 234 Ill. 2d at 193. In part, the supreme court cited to Rivera v. Illinois, 556 U.S. ___, 173 L. Ed. 2d 320, 330-31, 129 S. Ct. 1446, 1455 (2009), which affirmed its decision in People v. Rivera, 227 Ill. 2d 1, 14 (2007), to apply the harmless-error doctrine to errors stemming from the violation of its rule regarding peremptory challenges. See Rivera, 556 U.S. at ___, 173 L. Ed. at 330-31, 129 S. Ct. at 1455 (Supreme Court typically designates an error as "structural" and requiring automatic reversal only when the error necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence; a violation of a state-law-created right, such as the peremptory challenges at issue in Rivera, did not necessarily constitute a structural error and the Illinois Supreme Court did not err in applying the harmless-error doctrine).

Likewise, the Glasper court determined that the defendant's constitutional rights were not compromised by the trial court's Rule 431(b) violation, as a defendant's "right" to such questioning in Illinois courts is the product of the supreme court's inherent power to make rules regulating the

conduct of the trial courts. Glasper, 234 Ill. 2d at 196. Similar questioning as required in Rule 431(b), the supreme court noted, was not uniformly required in other state and federal jurisdictions. Glasper, 234 Ill. 2d at 198-99. Further, automatic reversal was not required in other cases where a defendant's constitutional rights had been affected. See Glasper, 234 Ill. 2d at 198 (identifying cases where automatic reversal was not required where prosecution made erroneous reference to a defendant's decision to exercise his constitutional right to remain silent). Thus, the Glasper court determined that the trial court's error in failing to question the jury as required by Rule 431(b) did not rise to the level of structural error, and it stated, "we decline to find that a violation of Rule 431(b) is per se reversible in light of the language and history of the rule." Glasper, 234 Ill. 2d at 200.

However, the Glasper court limited its holding to the version of Rule 431(b) in effect at the time of its defendant's trial, and it recognized that under that version, a trial court was not mandated to question jurors on the Zehr principles unless requested by the defendant. Glasper, 234 Ill. 2d at 200. It stated that its holding would not necessarily apply to subsequent versions of the rule and that its holding was not that a Rule 431(b) violation could never result in reversible error. Glasper, 234 Ill. 2d at 200. The supreme court, under its facts, had merely determined that there was no evidence that the trial court's Rule 431(b) violation led to the defendant being tried before a biased tribunal, especially given that the jury had been admonished and instructed against forming an adverse inference against the defendant based on his decision not to testify. Glasper, 234 Ill. 2d at 200-01.

We first note that Glasper involved harmless-error analysis, and not plain-error analysis, which is implicated in this case.[3] Naturally, the latter language in Glasper has led the appellate courts

---

[3] "A plain-error analysis applies where the defendant fails to make a timely objection in the trial court, while a harmless-error analysis applies where the defendant timely objects to the error."

addressing the subsequent version of Rule 431(b) to inconsistent outcomes on the question of whether a violation of the amended rule results in reversal. We further note that People v. Thompson, No. 1--07--2891 (2009) (unpublished order under Supreme Court 23), appeal allowed, 234 Ill. 2d 547 (2009), is currently pending before the supreme court. In Thompson, the First District held that a violation of Rule 431(b) constituted plain error under the second prong and triggered automatic reversal. See People v. Wheeler, No. 1--08--1370, slip op. at 14 (March 31, 2010). As the supreme court has yet to issue an opinion in Thompson or otherwise provide more guidance on this issue, we hold that the trial court's violation of Rule 431(b) was not plain error under the second prong.

In Wheeler, slip op. at 9-10, the First District determined that the trial court violated Rule 431(b) by failing to individually question jurors during voir dire, though it had mentioned all four Zehr principles before the questioning commenced. The defendant did not raise the issue in a posttrial motion and argued that the appellate court could review under the second prong of the plain-error doctrine. The Wheeler court recognized two lines of cases on the issue. Wheeler, slip op. at 13-14. The Wheeler court found that the reasoning in Glasper applied with equal force "against a presumption-of-prejudice finding that a second-prong plain error would trigger in this case." Wheeler, slip op. at 19. The court explained that it found that the defendant had failed to persuade it to find that full compliance with the 2007 version of Rule 431(b) was indispensable to a fair trial (second-prong plain error) when the trial court's erroneous denial of the defendant's request in Glasper was not indispensable to a fair trial under the similar harmless-error analysis. Wheeler, slip op. at 19-20. Thus, the court held that the error did not trigger automatic reversal. Wheeler, slip op.

---

People v. Roberson, No. 4--07--0864, slip op. at 6 (May 13, 2010).

at 20.

We agree with Wheeler and similar cases that have determined that a Rule 431(b) violation does not always constitute an error so serious that the defendant was deprived of a fair trial. See People v. Haynes, No. 1--08--0805 (March 30, 2010); People v. Nugen, No. 1--07--2506 (March 8, 2010); People v. Hammonds, No. 1--08--0194 (February 11, 2010); Magallanes, 397 Ill. App. 3d 72; People v. Chester, 396 Ill. App. 3d 1067 (2010); People v. Amerman, 396 Ill. App. 3d 586 (2009); People v. Alexander, 396 Ill. App. 3d 563 (2009) (finding automatic reversal not warranted under plain-error analysis for violations of amended Rule 431(b)). The Magallanes court explained that the same type of inquiry is involved in both plain-error and harmless-error analyses with the difference being that the burden of persuasion rests with the defendant in the former and the State in the latter. Magallanes, 397 Ill. App. 3d at 99. We find persuasive the Magallanes court's commentary that it was incongruous that the defendant in Glasper, who did everything in his power to address the error, would not be entitled to a new trial, but that a defendant who failed to object would be entitled to a new trial. Magallanes, 397 Ill. App. 3d at 99. Accordingly, in light of the facts of this case, we decline to follow this district's Blair decision and similar cases where reversal was granted. See People v. Anderson, No. 1--07--1768 (March 29, 2010); People v. Yusuf, No. 4--08--0034 (February 4, 2010); Blanton, 396 Ill. App. 3d 230; Graham, 393 Ill. App. 3d 268 (violation of amended Rule 431(b) triggered reversal under second prong of plain-error doctrine).

In Blair, as here, the trial court failed to question any individual juror regarding all four Zehr principles. This court decided that "[i]n light of the mandatory language of amended Rule 431(b) and given the nature of the error in this case," the error "denied defendant a substantial right, undermined the fairness of his trial, and impacted the integrity of the judicial process." Blair, 395 Ill. App. 3d at

478. The <u>Blair</u> court reversed the defendant's conviction and remanded the matter for a new trial. While the court did not state that every violation of Rule 431(b) should result in automatic reversal, it found that the trial court's noncompliance with the rule compromised the defendant's right to a fair trial even where the jury had been informed of all the <u>Zehr</u> principles and instructed that by law it was obligated to follow them. The dissent in <u>Blair</u> argued that the majority failed to adhere to <u>Glasper</u> in that the error was not structural and did not require reversal under the plain-error doctrine. <u>Blair</u>, 395 Ill. App. 3d at 487-88 (Schostok, J., dissenting).

We agree with <u>Wheeler</u> and the dissent in <u>Blair</u> that the 2007 amendment did not alter the right to <u>Zehr</u> questioning during <u>voir dire</u>, a right that <u>Glasper</u> considered to be "neither 'a fundamental right, [nor] even a constitutional protection.' " <u>Wheeler</u>, slip op. at 19, quoting <u>Glasper</u>, 234 Ill. 2d at 193. We too find that the <u>Glasper</u> reasoning applies to the current version of Rule 431(b) with equal force and that a similar analysis under the plain-error doctrine as under harmless-error analysis is required before reversing a defendant's conviction. The similarity in the analyses being that either the State (harmless-error analysis) or the defendant (plain-error analysis) must establish that the respective error was or was not so prejudicial that the defendant was denied a fair trial. See <u>People v. Thurow</u>, 203 Ill. 2d 352, 363 (2003). Acknowledging the diverging opinions on this issue, we maintain that the purpose of Rule 431(b) is not diminished by our finding that the violation in this case does not satisfy the second prong of the plain-error doctrine. In cases where the facts suggest that the defendant was tried before a biased jury, a Rule 431(b) violation may still result in reversal under the second prong of the plain-error analysis, as the <u>Glasper</u> court indicated was likewise possible under a harmless-error analysis. See <u>People v. Schaefer</u>, 398 Ill. App. 3d 963 (2010) (unlike in <u>Blair</u>, where jurors were admonished on and instructed to follow the <u>Zehr</u> principles,

the prospective jurors in Schaefer were not admonished as to the Zehr principles, were not individually questioned, and were not provided such instructions prior to deliberating; thus, the defendant was entitled to reversal under the second prong of the plain-error doctrine).

In this case, defendant does not argue, nor do we find any evidence in the record to support, that he was prejudiced by the trial court's failure to individually ask prospective jurors whether they accepted the principle that in delivering a verdict they could not use against him defendant's decision not to testify. The record shows that prospective jurors were informed of all four Zehr principles before individual questioning commenced. When individually questioning each juror, the trial court either reminded the juror of the principles of law it spoke of earlier or admonished the juror that defendant did not have to testify or both. Each juror responded that he or she understood and accepted these principles. Further, the jury was instructed verbally and given IPI Criminal 4th No. 2.04, which provided that in arriving at the verdict it must not consider in any way the fact that defendant did not testify. Accordingly, we find that the second prong of the plain error analysis, that the error in this case was so serious that defendant was denied a fair trial, was not met.

### E. Motion Alleging Ineffective Assistance of Counsel

Defendant's final claim on appeal is that the trial court erred in failing to inquire into his allegations of ineffective assistance of counsel. Defendant filed a pro se motion entitled "Motion for Appointment of Counsel Outside the Office of the Lake County Public Defender," in which he made several allegations of ineffective assistance by his trial counsel. He raised similar claims in a pro se motion for a new trial. On June 25, 2008, without hearing evidence or argument or making any comment on defendant's allegations, the trial court found the pro se motions untimely and refused to consider them. The State contends that the motions were untimely, having been filed 119 days after

the verdict and 40 days after the final judgment. Defendant argues that when a defendant files a pro se challenge to trial counsel's performance, the trial court is to inquire into and examine the matters underlying the defendant's claims.

When a defendant is represented by counsel, he generally has no authority to file pro se motions, and the court should not consider them. People v. Serio, 357 Ill. App. 3d 806, 815 (2005). Defendants have the right either to have counsel represent them or to represent themselves, but they do not have the right to both. Serio, 357 Ill. App. 3d at 815. Therefore, a defendant represented by counsel may not file pro se motions. Serio, 357 Ill. App. 3d at 815. An exception to this rule permits a defendant represented by counsel to raise pro se claims of ineffective assistance of counsel if they include supporting facts and specific claims. Serio, 357 Ill. App. 3d at 815. Here, we conclude that defendant's claims of ineffective assistance of counsel in his pro se motions were sufficiently detailed so as to fall into this exception.

We next consider whether defendant's pro se motions were untimely, as the State contends. Defendant argues that the trial court had continuing jurisdiction because defendant's motion to reduce his sentences, which was filed by counsel, was pending, and thus the pro se motions were timely. We agree with the State, as defendant's pro se motions were filed beyond 30 days of the final sentencing order. The trial court did not state it did not have jurisdiction to hear the motions but rather denied the motions as untimely, which was not error. Despite the fact that defendant's motion to reduce his sentences was pending, the purpose of a hearing conducted pursuant to People v. Krankel, 102 Ill. 2d 181 (1984), is to prevent a situation where defense counsel would have to argue his own ineffectiveness at trial in a motion for a new trial. See People v. Moore, 207 Ill. 2d 68, 78 (2003). That risk was not present in this case, where defendant's motion for a new trial had already been

-28-

argued and denied prior to his allegations. Accordingly, the trial court was not obligated to further inquire into defendant's allegations of ineffective assistance of counsel.

We do note that the only allegation pertaining to sentencing was defendant's claim that counsel failed to challenge the order that made his sentences consecutive, which arguably could have presented a conflict for counsel. However, as the State points out, section 5--8--4(a)(iv) of the Unified Code of Corrections (730 ILCS 5/5--8--4(a)(iv) (West 2006)) mandates that a trial judge impose consecutive sentences if the defendant was convicted of leaving the scene of an accident involving death or personal injury and of reckless homicide. To the extent that the trial court may have been obligated to inquire into that claim and appoint new counsel to argue the motion to reduce the sentences, we find that error to be harmless since there was no reason for counsel to object to this portion of the sentence. See Moore, 207 Ill. 2d at 80 ("A trial court's failure to appoint new counsel to argue a defendant's pro se posttrial motion claiming ineffective assistance of counsel can be harmless beyond a reasonable doubt"). We note that defendant may still make his claims of ineffective assistance of counsel in a postconviction petition. See 725 ILCS 5/122--1 et seq. (West 2008).

### III. CONCLUSION

In conclusion, we (1) vacate defendant's convictions on counts II, III, and IV, as they violate the one-act, one-crime rule; (2) reduce his conviction on count I from a Class 2 violation of section 11--401(b) of the Vehicle Code to a Class 4 violation of section 11--401(a) of the Vehicle Code; (3) vacate the order that defendant serve 85% of his reckless homicide sentence and order that upon remand defendant receive one day of good-conduct credit for each day of imprisonment, pursuant to section 3--6--3(a)(2.1) of the Unified Code of Corrections (730 ILCS 5/3--6--3(a)(2.1) (West

2006)); (4) deny defendant's request for a new trial for the trial court's Rule 431(b) violation as that error was forfeited and not reversible under the plain-error rule; and (5) affirm the trial court's dismissal as untimely of defendant's motions alleging ineffective assistance of counsel. We remand the cause for resentencing.

Affirmed in part and vacated in part; cause remanded.

BURKE, J., concurs.

JUSTICE HUDSON, dissenting:

The majority acknowledges that the trial court's failure to comply with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431(b), eff. May 1, 2007) constituted error, but concludes that this error does not require reversal. For the reasons set forth in People v. Schaefer, 398 Ill. App. 3d 963 (2010), and People v. Blair, 395 Ill. App. 3d 465 (2009), I respectfully dissent.