# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Patrick*, 2011 IL 111666

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TYRON L. PATRICK, Appellee. |
| Docket No. | 111666 |
| Filed | December 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Even though a new trial was one of the remedies sought in *pro se* allegations of ineffective assistance made before notice of appeal, a common law right to a *Krankel* inquiry into their factual basis was created and was not subject to the statute requiring that a motion for a new trial must be made within 30 days of verdict. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Lake County, the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Michael A. Scodro, Solicitor General, and Michael M. Glick and Stephen M. Soltanzadeh, Assistant Attorneys General, of Chicago, and Patrick Delfino, Lawrence M. Bauer and Victoria E. Jozef, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Jaime L. Montgomery, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

Justices

CHIEF JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1     The issue in this appeal is whether the trial court erred in refusing to consider the defendant's *pro se* posttrial motions alleging ineffective assistance of counsel because those motions were not timely filed under section 116-1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-1(b) (West 2006)). We hold that the trial court was required to conduct a preliminary inquiry into the factual basis of the defendant's ineffective assistance allegations. Accordingly, we affirm the appellate court's judgment remanding this matter to the trial court for a preliminary examination of the defendant's allegations.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant Tyron L. Patrick was charged by indictment in the circuit court of Lake County with reckless homicide (720 ILCS 5/9-3(a) (West 2006)) and four counts of failing to report an accident involving death or injury (625 ILCS 5/11-401(b) (West 2006)). The charges arose from a collision between two vehicles resulting in the death of one person and injuries to three others.

¶ 4     The evidence at trial established that Holly Graham was driving her vehicle with Tiara Langston in the front passenger seat. Gary Nixon and Jauqtel Foster were in the backseat of the car. Graham's car was struck by another vehicle while traveling through an intersection. Graham died as a result of the collision and her three passengers suffered severe injuries.

¶ 5     Lieutenant Richard Theis of the North Chicago police department testified that he was on patrol shortly after midnight when he saw a black car traveling at a high rate of speed. The

vehicle failed to stop at an intersection. Theis turned around and accelerated to follow the vehicle, but he could not catch up to the black car. Theis estimated that the car was traveling approximately 80 miles per hour in a 30-miles-per-hour zone. Theis lost sight of the vehicle and called for backup. One to two minutes after he lost sight of the vehicle, the officers approached a collision between two vehicles at an intersection. Theis observed the black car stopped in the southbound lanes of the street and a white car against a tree. There were no occupants in the black car.

¶ 6        Officer Donald Florance testified that he responded to Lieutenant Theis's call for backup. When they arrived at the scene, he observed a black Monte Carlo with no occupants and a white Mercury with three people inside. Another passenger had been thrown from the Mercury. Florance further testified that approximately two weeks prior to this incident, he observed defendant standing by a gray Cadillac. When defendant got into the Cadillac and drove away, Officer Florance followed and activated his emergency lights to make a traffic stop. Defendant began traveling 50 to 60 miles per hour in a 25-miles-per-hour zone. Florance eventually ended his pursuit when defendant accelerated to about 90 miles per hour.

¶ 7        Officer Morris Wade testified that two days after the crash, defendant called and asked what charges would be filed if he surrendered. Wade told defendant that the investigation had not been completed and he was unsure of potential charges. When Wade asked defendant if he had received medical treatment for any injuries, defendant responded that he was not injured. Defendant stated he would turn himself in, but did not identify himself as the driver of the black vehicle.

¶ 8        Sergeant Salvatore Cecala testified that he recovered blood samples from the driver-side air bag and the driver-side floor of the black Monte Carlo. Cecala opined that the blood on the air bag could have come only from the driver. Cecala found a purse on the front passenger-side floor of the vehicle containing the identification of Tarielle Walls. He also found three cell phones in the car, one on each floorboard in the front and one plugged into the back console. One of the cell phones was marked with the name "Monique." Based on his investigation, Cecala estimated that the vehicle was traveling approximately 95 miles per hour.

¶ 9        Cecala further testified that while taking a DNA sample from defendant, he noticed injuries above defendant's eyebrow, above his nose, on his shoulder, and on his back. The State presented testimony that the DNA profiles from the air bag and floorboard of the car matched defendant's DNA profile.

¶ 10        After the State rested, defendant called Tarielle Walls. Walls testified that she was at a club with her sisters, Marielle and Monique, and her cousin when she met defendant and a man named "D." She had known defendant for approximately two years, but met "D" for the first time that night. Walls testified that "D" was driving the black Monte Carlo that night, she was in the front passenger seat, and defendant was in the backseat. A white car pulled out from a stop sign and the cars collided. "D" and defendant both left the vehicle. A woman helped Walls get out of the car and she sat on the curb until police officers arrived. Walls testified that the car was traveling at the speed limit, not 90 miles per hour.

¶ 11        On February 27, 2008, the jury found defendant guilty of reckless homicide, failing to

report an accident involving a death, and three counts of failing to report an accident involving an injury. Defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. On May 16, 2008, the trial court denied that motion and sentenced defendant to consecutive nine-year terms for reckless homicide and failing to report an accident involving a death. He was sentenced to five years' imprisonment for each count of failing to report an accident involving an injury, to be served concurrently.

¶ 12        On June 10, 2008, defendant filed a motion to reconsider his sentence. While that motion was pending, defendant filed a *pro se* "Motion for Appointment of Counsel Outside the Office of the Lake County Public Defender." In that motion filed on June 24, 2008, defendant alleged his trial counsel: (1) was not licensed to practice law and failed to inform him of that fact; (2) colluded with an assistant State's Attorney to secure his conviction by warning defendant that additional charges could be filed if he did not cooperate; (3) forgot to bring several exhibits crucial to his defense on the second day of trial; (4) failed or refused to challenge the imposition of consecutive sentences; (5) did not file posttrial motions challenging the police department's investigation and its failure to fingerprint the black Monte Carlo; (6) deprived him of his right to a speedy trial; (7) did not challenge in a posttrial motion the trial court's decision to allow a juror to remain on the jury after he fell asleep during trial; (8) failed to argue that defendant had no duty to report the accident because police officers were already present; and (9) failed to present an expert witness at trial.

¶ 13        Defendant's motion for appointment of counsel was accompanied by a *pro se* motion for judgment notwithstanding the verdict or, alternatively, for a new trial, repeating the allegations of ineffective assistance of counsel. Defendant sought an evidentiary hearing with appointed counsel outside the public defender's office.

¶ 14        The hearing on defendant's motion to reconsider his sentence was set for the following day. At that hearing, the trial court stated the *pro se* motions were filed "outside of the time period. I admonished the Defendant, so that will not be considered by the Court. It is untimely." The trial court did not conduct any inquiry into the ineffective assistance allegations. The hearing on defendant's motion to reconsider his sentence was continued. Subsequently, on August 1, 2008, the trial court denied defendant's motion to reconsider his sentence.

¶ 15        On appeal, the appellate court vacated defendant's three convictions for failing to report an accident involving an injury based on the one-act, one-crime rule. The appellate court also held that the evidence was insufficient to sustain defendant's conviction of failing to report an accident involving a death and reduced that conviction to the lesser-included offense of leaving the scene of an accident (625 ILCS 5/11-401(a) (West 2006)). The appellate court further held that the trial court erred in ordering defendant to serve 85% of his reckless homicide sentence and that the trial court's violation of Supreme Court Rule 431(b) was not reversible error under the plain-error rule.

¶ 16        As for the trial court's refusal to consider defendant's *pro se* motions alleging ineffective assistance of counsel, the appellate court held that the trial court was required to examine the factual basis of those allegations. The appellate court observed that the trial court still had

jurisdiction over the matter when the *pro se* motions were filed, and held that the trial court erred in failing to inquire into the allegations of ineffective assistance of counsel. Accordingly, the cause was remanded to the trial court for a preliminary examination of the defendant's *pro se* allegations of ineffective assistance of counsel and for resentencing. 406 Ill. App. 3d 548.

¶ 17 We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)).

¶ 18          II. ANALYSIS

¶ 19 Initially, the State contends that the appellate court did not have jurisdiction to review the trial court's decision on defendant's *pro se* posttrial motions. According to the State, the two notices of appeal filed by defendant do not identify the trial court's order on the *pro se* motions or the date of that order. The appellate court, therefore, lacked jurisdiction because the notices of appeal do not adequately identify the challenged judgment.

¶ 20 The timely filing of a notice of appeal is the only jurisdictional step for initiating appellate review. *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). If there is no properly filed notice of appeal, the reviewing court lacks jurisdiction and must dismiss the appeal. *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

¶ 21 The purpose of a notice of appeal is to notify the prevailing party that the other party seeks review of the circuit court's judgment. *Lewis*, 234 Ill. 2d at 37. A notice of appeal confers jurisdiction on the reviewing court to consider only the judgments or pertinent parts specified in the notice. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). A notice of appeal " 'should be considered as a whole and will be deemed sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought, thus advising the successful litigant of the nature of the appeal.' " *Smith*, 228 Ill. 2d at 105 (quoting *Lang v. Consumers Insurance Service, Inc.*, 222 Ill. App. 3d 226, 229 (1991)).

¶ 22 Two notices of appeal were filed in this case. One of the notices, signed by defendant's trial counsel, identifies the offenses and sentences imposed. The "Date of Judgment Order" is listed as August 1, 2008, the date the trial court denied defendant's motion to reconsider his sentence. The other notice of appeal, signed by the circuit court clerk, also lists the offenses and sentences. That notice lists the "Date of Judgment Order" as May 16, 2008, the date of sentencing, and is left blank under the heading, "If appeal is not from a conviction, nature of Order appealed from." The State argues that the notices of appeal are insufficient to confer appellate jurisdiction because they do not adequately identify the trial court's order on defendant's *pro se* motions.

¶ 23 We addressed a similar argument on appellate jurisdiction in *Lewis*. In that case, the State contended that the notice of appeal did not confer jurisdiction over the defendant's challenge to a street-value fine because it only listed an order denying a motion to suppress evidence. *Lewis*, 234 Ill. 2d at 36-37. In rejecting that argument, we observed that the defendant's notice of appeal accurately identified the offense and sentence. *Lewis*, 234 Ill. 2d at 38. By leaving blank the part of the notice stating "Nature of order appealed from, other than conviction," the defendant indicated he was appealing from his conviction. *Lewis*, 234 Ill.

2d at 38. Although the notice of appeal listed the date of the order or judgment as "4/3/06-Order denying motion to suppress," the notice clearly indicated defendant was appealing from no orders other than his conviction. *Lewis*, 234 Ill. 2d at 38. We concluded that the notice of appeal was sufficient to confer appellate jurisdiction over defendant's challenge to his street-value fine because, considered as a whole and construed liberally, the notice adequately identified the challenged judgment and informed the State of the nature of the appeal. *Lewis*, 234 Ill. 2d at 39.

¶ 24    In this case, the notice of appeal signed by the circuit court clerk accurately identifies the offenses and sentences. The notice was left blank under the heading, "If appeal is not from a conviction, nature of Order appealed from." As in *Lewis*, by leaving that part of the notice blank, the defendant indicated he was appealing from his conviction.

¶ 25    The notice of appeal signed by defense counsel also accurately identifies the offenses and sentences. The date of the judgment order is listed as August 1, 2008, the date the trial court denied defendant's final motion directed against the judgment. We conclude that both notices of appeal indicate defendant was appealing from the judgment of conviction.

¶ 26    To the extent that the conflicting dates listed in the notices of appeal could have caused any confusion, we note that the purpose of a notice of appeal is to inform the prevailing party in the trial court that the unsuccessful party seeks review. *Lewis*, 234 Ill. 2d at 37. Briefs, not the notice of appeal, specify the precise points relied upon for reversal. *Butrell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979). In this case, the notices of appeal served the purpose of informing the State that defendant sought review of the judgment of conviction.

¶ 27    Further, a failure to comply strictly with the form of notice is not fatal if the deficiency is one of form rather than substance and the appellee is not prejudiced. *General Motors Corp.*, 242 Ill. 2d at 176. The State does not argue it was prejudiced in any way by the notices of appeal and it does not appear that there was any prejudice. Accordingly, we conclude that the appellate court had jurisdiction to review the trial court's decision on defendant's *pro se* posttrial motions.

¶ 28    On the merits, the State contends that section 116-1(b) of the Code of Criminal Procedure (725 ILCS 5/116-1(b) (West 2006)) requires defendants to file a written motion for a new trial within 30 days after the entry of a guilty verdict. Defendant's *pro se* motions sought a new trial and that is the relief available for any successful ineffective assistance of counsel claim. Defendant's *pro se* motions are, therefore, governed by the plain language of section 116-1(b). Defendant filed his *pro se* motions 118 days after the guilty verdict in this case. Accordingly, the State maintains that the *pro se* motions were not timely filed under section 116-1(b) and the trial court properly refused to consider those motions.

¶ 29    Defendant responds that a *pro se* motion alleging ineffective assistance of counsel is not a motion for a new trial within the meaning of section 116-1(b). A *pro se* motion alleging ineffective assistance is governed by the common law procedure developed by this court in *People v. Krankel*, 102 Ill. 2d 181 (1984), and refined in subsequent cases. Under the common law procedure, a *pro se* defendant is not required to file a written motion, but must only bring the claim to the trial court's attention. Additionally, *pro se* motions alleging

-6-

ineffective assistance are not limited to counsel's performance at trial, but may also arise from guilty plea or probation revocation proceedings. Defendant, therefore, contends that section 116-1(b), requiring a written motion for a new trial filed within 30 days of a guilty verdict, cannot be applied to the *Krankel* procedure.

¶ 30    We agree with defendant that the State's attempt to graft the statutory requirement in section 116-1(b) onto a common law remedy is fundamentally flawed. A *pro se* posttrial motion alleging ineffective assistance of counsel is not a new trial motion as outlined in section 116-1. Rather, it is part of a separate common law procedure developed in a line of cases beginning with *Krankel*.

¶ 31    In *Krankel*, the defendant filed a *pro se* posttrial motion alleging his trial counsel was ineffective for refusing to investigate or present an alibi defense. *Krankel*, 102 Ill. 2d at 187. The trial court denied the motion without appointing new counsel to assist the defendant. *Krankel*, 102 Ill. 2d at 189. This court remanded the matter for a new hearing on the defendant's *pro se* motion with appointed counsel other than his originally appointed trial counsel. *Krankel*, 102 Ill. 2d at 189.

¶ 32    Following *Krankel*, this court clarified that newly appointed counsel is not automatically required in every case when a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). Rather,

> "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 77-78.

¶ 33    This appeal requires a determination of whether the trial court may refuse to conduct any inquiry into the factual basis of defendant's *pro se* posttrial motions alleging ineffective assistance of counsel based on a finding that those motions are untimely under section 116-1(b). Section 116-1 provides:

> "Motion for New Trial. (a) Following a verdict or finding of guilty the court may grant the defendant a new trial.
>
>     (b) A written motion for a new trial shall be filed by the defendant within 30 days following the entry of a finding or the return of a verdict. Reasonable notice of the motion shall be served upon the State.
>
>     (c) The motion for a new trial shall specify the grounds therefor." 725 ILCS 5/116-1 (West 2006).

The plain language of section 116-1(b), therefore, requires a motion for a new trial to be written and filed within 30 days after entry of a guilty finding or verdict.

¶ 34    The parties dispute whether a *pro se* motion alleging ineffective assistance of counsel is a motion for a new trial within the meaning of section 116-1(b). Generally, the character of a motion is determined by its content or substance, not by the label placed on it by the movant. *People v. Shellstrom*, 216 Ill. 2d 45, 51 (2005). We must examine the relief sought

to determine a motion's character. The character of a motion alleging ineffective assistance of counsel is, therefore, determined by the relief sought in the ineffective assistance claim.

¶ 35    The remedy for a valid claim of ineffective assistance of counsel should be tailored to the injury from the constitutional violation and should not unnecessarily infringe on competing interests. *People v. Curry*, 178 Ill. 2d 509, 537 (1997) (citing *United States v. Morrison*, 449 U.S. 361, 364 (1981)). Accordingly, in *Curry* this court ordered a new trial including the resumption of the plea negotiation process because the constitutional deprivation occurred during plea negotiations. *Curry*, 178 Ill. 2d at 536-37. This court concluded that simply ordering a new trial would not cure the injury from the constitutional violation during plea negotiations. *Curry*, 178 Ill. 2d at 536.

¶ 36    Here, defendant's *pro se* motions allege several instances of ineffective assistance of trial counsel. Defendant sought a new trial on some of those allegations. Others, however, would entitle defendant to other relief if they were successful. For instance, defendant alleges that his trial counsel deprived him of his right to a speedy trial. If defendant were successful on that claim, he would be entitled to reversal of his convictions. See *People v. Williams*, 204 Ill. 2d 191, 208 (2003) (violation of speedy-trial act required reversal of conviction); *People v. Mayo*, 198 Ill. 2d 530, 536 (2002) (a defendant not tried within the statutory speedy-trial period must be discharged from custody and the charges must be dismissed).

¶ 37    Defendant also claimed ineffective assistance of counsel during sentencing, alleging that his trial counsel failed to challenge the imposition of consecutive sentences. Defendant would not be entitled to a new trial as a remedy on that claim because it could not have impacted his trial. He would only be entitled to resentencing if successful on that claim. Thus, portions of defendant's *pro se* motions do not seek a new trial. Defendant's *pro se* motions cannot be characterized simply as motions for a new trial subject to the filing requirements of section 116-1(b).

¶ 38    The application of section 116-1(b) would preclude defendant from raising any *pro se* ineffective assistance claim based on his sentencing because those claims could not be filed within the 30-day statutory time period. The *Krankel* procedure is intended to include *pro se* ineffective assistance claims arising from sentencing, however. See *People v. Sims*, 167 Ill. 2d 483, 517-20 (1995) (applying *Krankel* to claim that trial counsel provided ineffective assistance during sentencing).

¶ 39    We note that once a notice of appeal has been filed, the trial court loses jurisdiction of the case and may not entertain a *Krankel* motion raising a *pro se* claim of ineffective assistance of counsel. Further, a *Krankel* motion is not a substitute for a postconviction petition. *Krankel* serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims.

¶ 40    We emphasize that section 116-1(b) still controls written motions for a new trial filed by defendants within 30 days following entry of a finding or the return of a verdict. To be clear, the holding in this case applies only to alleged deficient performance of trial counsel and not to any other errors.

¶ 41    The common law procedure developed in *Krankel* and subsequent cases is intended to

promote consideration of *pro se* ineffective assistance claims in the trial court and to limit issues on appeal. See *People v. Jocko*, 239 Ill. 2d 87, 91 (2010) (*Krankel* procedure encourages trial courts to fully address *pro se* claims of ineffective assistance and thereby narrow issues on appeal). The procedure is not intended to be constrained by section 116-1(b). The trial court erred in refusing to consider defendant's *pro se* posttrial motions after finding they were untimely under section 116-1(b).

¶ 42 It is true that section 116-1(b) says a defendant must file a written motion for a new trial within 30 days of the entry of a finding or the return of a verdict. However, an exception to that rule is if a defendant is seeking a new trial based on claims of ineffective assistance of counsel and the claim is raised before a notice of appeal is filed. In that case, the defendant may have a *Krankel* hearing to determine if his claims have any merit and warrant the appointment of separate counsel. For all other claims seeking a new trial, a defendant must comply with section 116-1(b)'s requirements.

¶ 43 Here, the trial court did not conduct any inquiry into defendant's *pro se* ineffective assistance of counsel allegations. The trial court was required to conduct a preliminary inquiry into the factual basis of defendant's allegations. See *Moore*, 207 Ill. 2d at 79. Accordingly, this matter must be remanded to the trial court to conduct the required preliminary examination of defendant's claims.

¶ 44                                     III. CONCLUSION

¶ 45 For the foregoing reasons, we hold that the trial court erred in failing to conduct a preliminary examination into the factual basis of defendant's *pro se* posttrial motions alleging ineffective assistance of counsel. This cause must be remanded for a preliminary inquiry into the defendant's allegations. Accordingly, we affirm the appellate court's judgment.

¶ 46 Affirmed.