NOTICE

Decision filed 09/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231206-U

NO. 5-23-1206

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 23-CF-10 |
| | ) | |
| FREDERICK O. GOSS, | ) | Honorable |
| | ) | Thomas J. Tedeschi, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment.
Presiding Justice McHaney and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We remand to the trial court to conduct an inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 2    After being found guilty by a jury, defendant Frederick O. Goss was sentenced to 44 years' incarceration. He appeals, arguing that the trial court (1) failed to conduct an inquiry into his *pro se* claims of ineffective assistance of counsel, (2) incorrectly imposed an extended-term sentence, (3) relied on an aggravating factor inherent in the underlying offense when determining his sentence, and (4) abused its discretion by ordering the sentence to run consecutive to a 44-year sentence imposed in defendant's previous case. We agree that this case must be remanded for a hearing on defendant's *pro se* claims of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and, thus, do not address the remaining issues raised by defendant

1

on appeal.

¶ 3                              I. BACKGROUND

¶ 4      We recite only those facts necessary to understand this appeal. On June 2, 2021, Goss was indicted for armed robbery and aggravated discharge of a firearm in Jefferson County case No. 2021-CF-213. During the incident that led to these charges, Goss was shot in the groin, leg, and arm, resulting in him being in a wheelchair. The matter eventually proceeded to a jury trial on October 26, 2021. On that day, retired Correctional Officer Jeffery Clark was transporting Goss to the Jefferson County courthouse for the trial, arriving at the courthouse's sally port at 12:55 p.m. Officer Clark uncuffed Goss to allow Goss to transfer himself from the car to a wheelchair. Once seated, Goss grabbed Officer Clark's gun, and a struggle ensued. Both men fell to the ground, and Goss unholstered the weapon. As the men fought over the gun, it discharged. Officer Clark was not shot but had a burn on his arm from the gun's muzzle. Deputy David May, a Jefferson County Sheriff's Office employee, was working security at the courthouse that day and observed the start of the altercation via surveillance video. He ran to the sally port and heard one gunshot as he descended the stairs. Upon exiting the stairwell, he observed Officer Clark lying on the ground. Goss pointed the gun at Deputy May. Deputy May ordered Goss to drop the weapon, and when he refused, Deputy May shot Goss, injuring him.

¶ 5      Goss was eventually found guilty by a jury of armed robbery and aggravated discharge of a firearm in case No. 2021-CF-213. During his sentencing hearing in that matter, a surveillance video was shown of the events that occurred in the sally port on October 26, 2021. Goss was sentenced to 40 years' incarceration.

¶ 6      As a result of the incident in the sally port, the State charged Goss on February 6, 2023, by supplemental information with attempted first degree murder (720 ILCS 5/9-1(a)(1) (West 2022)),

2

aggravated discharge of a firearm (*id.* § 24-1.2(a)(3)), disarming a correctional institutional employee (*id.* § 31-1a(a)), and attempted escape (*id.* §§ 8-4(a), 31-6(a)).

¶ 7                                                    A. Goss's Filings

¶ 8       On March 24, 2023, Goss filed a motion titled, "Effective Assistance of Counsel," complaining that his appointed counsel, Assistant Public Defender Neal Heflin, failed to object to the State adding the additional charge of attempted escape and that there was no evidence to support the charge.[1] He also asserted that he had not "received his full state discovery in order to prepare for his defense." He stated that he had brought this to the court's attention on February 9, 2023, and that he had repeatedly asked his attorney for the discovery.

¶ 9       On April 20, 2023, Goss authored a letter to the trial court again requesting discovery. Goss claimed that a video existed that showed a different version of events than the surveillance video. On April 28, 2023, Goss filed a motion titled, "Unethical Complaint Against Defense Counsel Neal Heflin and Prosecutor in Charge of Mr. Goss Case." He claimed that a second video existed in addition to the surveillance video shown at the sentencing hearing in case No. 2021-CF-213. He indicated that he made the court aware that two videos existed, that his family had both videos, and that a "big discrepancy between these two videos" existed. He stated that his family met with Attorney Heflin, who showed them the video that was shown at the sentencing hearing, and "it was at that point Mr. Goss's family realized [that] (1) [the] State['s] video evidence was switched from video evidence to the Court on 2-9-23 (2) defense counsel was not working in fairness for Goss." Goss accused Attorney Heflin of violating attorney-client privilege and tampering with video evidence.

_____

[1]The original information filed on January 10, 2023, did not include the charge of attempted escape. It was added in the supplemental information filed on February 6, 2023.

¶ 10    On May 24, 2023, Goss filed a motion to dismiss Attorney Heflin as counsel and sought the appointment of new counsel "not connected to Jefferson County, Illinois." He, again, asserted that two different videos existed and that Mr. Heflin was "working with" the State by tampering with video evidence "in an effort to falsely charge Mr. Goss." He claimed that Attorney Heflin intentionally misrepresented facts and video evidence to mislead the court. He asserted that his trust and confidence in Attorney Heflin had been destroyed and that "it is not possible for Mr. Goss to be fairly represented by defense attorney Neal Heflin."

¶ 11    On June 14, 2023, Goss filed a motion for discovery. He also filed a motion for an independent video expert to prove that the State tampered with the video used at his sentencing hearing. On July 20, 2023, Goss filed a "Motion to Dismiss Defense Counsel Neal Heflin." He stated that he had no working relationship with Attorney Heflin and that he had lost all trust and confidence in him. As a result, both Goss and his family filed complaints with the Illinois Attorney Registration and Disciplinary Commission (ARDC). He also stated that the court failed to "grant[ ] me a hearing on this matter to state on record why I should or should not be granted a new attorney." Defendant accused Attorney Heflin of having a friendship with the victim and Deputy May and, again, discussed his issues with the video evidence.

¶ 12    On July 20, 2023, defendant filed another motion accusing Attorney Heflin of misconduct, claiming that Attorney Heflin withheld "damaging information of wrongdoing" by the State and sheriff's office. Defendant also recounted the same allegations regarding the video evidence. He accused Attorney Heflin of presenting a different video to help the State "in an effort to cover up misconduct" by the State and sheriff's office.

¶ 13                                    B. Jury Trial and Sentencing

¶ 14    The case proceeded to a jury trial, and on August 31, 2023, Goss was found not guilty of

4

attempted murder but guilty of aggravated discharge of a firearm, attempted escape, and disarming a correctional institutional employee.

¶ 15    A sentencing hearing was conducted on November 17, 2023. Attorney Heflin indicated that he did not have any evidence in mitigation. Attorney Heflin informed the court that he attempted to communicate with Goss regarding the sentencing hearing, but Goss would not cooperate with him in preparing for the hearing. The State presented a victim impact statement read by Officer Clark. Officer Clark stated that the incident shook his world, he suffered countless sleepless nights of bad dreams, and that, hopefully, in prison, Goss would learn that he could not get away with his actions. The State presented argument to the court, and when it came time for Attorney Heflin to make his argument, the following exchange occurred:

> "MR. HEFLIN: May it please the Court and counsel, I'm going to begin with the mitigating factors.
> THE DEFENDANT: I don't want you to speak for me. I don't want you to speak for me. Please don't speak for me.
> THE COURT: Defendant states on the record that he doesn't want his attorney to speak.
> THE DEFENDANT: I'll speak for myself.
> THE COURT: Mr. Heflin?
> MR. HEFLIN: Your Honor, I would prefer to make arguments.
> THE COURT: Absolutely.
> THE DEFENDANT: I don't want you to speak for me.
> THE COURT: Well, he's going to present his argument.
> THE DEFENDANT: Please don't speak for me.
> THE COURT: He's representing you.
> THE DEFENDANT: Because you people set up in here, man, and talked to me like y'all righteous, man. Y'all know what y'all did to me, man. You know. You can't even look at me in my face, man.
> MR. HEFLIN: Your Honor, I would ask the Court to inform Mr. Goss that he may make a statement in allocution as soon as we're through with arguments.
> THE DEFENDANT: Man, I don't want you to speak for me, man.
> THE COURT: So, Mr. Goss, the way this works is that your attorney is going to make arguments as to sentencing alternatives, and then—
> THE DEFENDANT: I understand that, but how can—
> THE COURT: —and then, I will allow you to speak directly to the Court.
> THE DEFENDANT: Man, how can he speak for me when he harmed me? I don't want him to speak for me. What he gonna say for me? I speak for myself.

5

THE COURT: All right. I'm gonna allow him to make arguments, and you are going to need to be quiet or I can have you removed.

THE DEFENDANT: Well, remove me.

THE COURT: And I can have—

THE DEFENDANT: Remove me. I don't want to be here.

THE COURT: Let me finish talking, okay? I'll let—

THE DEFENDANT: Take me back to the prison, man.

THE COURT: Excuse me. I'm talking.

THE DEFENDANT: Man, you people sit up in here and did this to me, man, and I caught y'all, man, and y'all know it. You people fabricated, man, lying on me, and you tampered with the video. You people sit up here and did this to me, man, and you know that shit, man. We caught y'all.

THE COURT: All right. So, Mr.—

THE DEFENDANT: And, then, when I try to present it to you, the video, you act like you will let me do it, and then when the time came to do it, you said no. I didn't produce no evidence on my own. I caught y'all, man, and I'm not finna be quiet. I don't need him to speak for me. What he gonna say for me when you sit up here and harm me?

THE COURT: He's going to make arguments as to sentencing alternatives which is how this sentencing hearing works.

THE DEFENDANT: Hey, can I have some water, please?

THE COURT: So, Mr. Goss, if you are going to continue to interrupt, I'm going to let you go out into the hallway, and then I can bring you back in.

THE DEFENDANT: Man, I didn't wanna come.

THE COURT: You didn't want to come. You're here. Do you want to proceed?

THE DEFENDANT: I don't want him to speak for me

THE COURT: Okay. Well, he's going to speak for you. He's going to make arguments because I'm asking him to, and then I'll allow you to address the Court if you want. That is your right. But you cannot continue to interrupt the proceedings. Otherwise, I'm going to allow you to leave if that's what you want to do.

THE DEFENDANT: I want to leave, man. I got a hundred years, man. You people took my life from me. You people sat here and fabricated this shit and took my life from me.

THE COURT: So before you leave—

THE DEFENDANT: Hey, can I get some water, please.

THE COURT: Before you leave, I'm going to read you your appeal rights, okay? And that is that you are going to have the right to appeal the judgment, but only if a notice of appeal is filed in the trial court within 30 days of today's date. If you desire to challenge any part of this sentence or sentencing hearing, you must file prior to an appeal a motion to reconsider the sentence or any challenge to the sentencing hearing within 30 days of today's date. The motion must be in writing and must set forth all the issues or claims of error about the sentence or the sentencing hearing. If you can't afford it, a copy of the transcript of the trial and sentencing hearing will be provided for you. If you can't afford an attorney, one is appointed to assist you in the appeal or a motion to reconsider the sentence. If that notice of appeal or motion to reconsider is not filed within 30 days of today, you will lose the right to appeal and challenge your sentence. If the motion to reconsider sentence is denied and you still wish to appeal, you must request the clerk to

6

file a notice of appeal within 30 days of the date that the motion to reconsider was denied. Any issue or claim of error about the sentence imposed or any part of the sentencing hearing you fail to raise in the written motion will not be considered by the appellate court. Those are your appeal rights. Do you want to continue to remain in here, or do you want to give up your right to be present at the sentencing hearing and leave at this time?

THE DEFENDANT: This what I wanna understand, man. You was—you, him, you can't even look at me in my face, man.

MR. FEATHERSTUN: For the record, I'm not here to stare Mr. Goss down.

THE DEFENDANT: You people sat here and took my life from me, man. You sat up here, you fabricated evidence and took my life.

THE COURT: I have heard you say that.

THE DEFENDANT: And when I tried to prove it and could prove it, my own attorney, he would tell you what I would tell him. Used my own shit against me, man, but I'm gonna get y'all. I'm gonna get y'all. God will get y'all, man. Get me out of here. Fuck y'all.

THE COURT: All right. Defendant says, 'Get me out of here. Fuck you all,' for the record. I am going to provide him with a copy of the appeal rights here in open court. And Mr. Goss—

THE DEFENDANT: Can I get some water, please?

THE COURT: I will impose sentence in your absence, and you are not going to be giving a statement of allocution. Correct, sir?

THE DEFENDANT: Could I have some water, please?

THE COURT: Answer my question

THE DEFENDANT: I ain't got nothing to stay to you, man.

THE COURT: All right. Then, you are free to go. You have a great day. Thank you. No further dates.

THE DEFENDANT: Can I get that water, please?

THE COURT: He can get water somewhere else. All right? You can have a good day. You are free to go if that's your wish.

THE DEFENDANT: You won't let me drink some water, man?

THE COURT: There is water out in the hallway. I've got a sentencing hearing to conduct.

THE DEFENDANT: You's a bitch. Fuck these people, man. You's a bitch. God gonna strike your mother. I wish bad on you.

THE COURT: Get him out of here, please.

THE DEFENDANT: I wish bad on you motherfuckers, bitch."

¶ 16    Mr. Heflin then proceeded with his argument. After hearing arguments of counsel, the trial court rendered the sentence. The court indicated that Goss is a "truly dangerous" person and "the social scientist in me wishes that I could figure out what we could do to allow people to live in society and not in a cage their whole life." The court further stated:

7

"These offenses occurred in this very courthouse in the midst of a jury trial, and all of us are aware that when there is a jury trial up here in this county, there's a lot of activity. There's a lot of people. There's a lot of movement going on. Everyone's on high alert.

The public was present at the time that this offense occurred. We've got bullets flying downstairs in the basement. We have deputies discharging firearms to protect themselves and others on a lunch break in the courthouse. The very place, the very place where justice is to be served. It's frightening.

Mr. Heflin, State's Attorney, all of you that were here that day, court personnel, staff, all going about their daily business while bullets are flying downstairs. The threat of serious harm, definitely a factor in aggravation."

¶ 17    The trial court stated the other factors it considered in aggravation were deterring others from committing the same crime and Goss's history of criminality and delinquency. The court sentenced Goss to 44 years' incarceration on the aggravated discharge of a firearm conviction to be served at 85%. The court sentenced Goss to 14 years in prison for disarming a correctional institutional employee and 10 years' incarceration for the attempted escape because "[h]e's extended term eligible. No doubt." The sentences were to run concurrently with each other.

¶ 18    The trial court discussed Goss's lengthy criminal history and stated that it was exercising its discretion to run the sentence consecutive to the sentence imposed in case No. 2021-CF-213. It indicated that, due to the nature and circumstances of the offense and the history and character of Goss, consecutive sentences were required to protect the public from further criminal conduct. It stated that Goss was a truly dangerous man and a danger to the public, and Goss had proven that for decades. The trial court also noted that subsection three of the statute governing concurrent and consecutive terms of imprisonment (730 ILCS 5/5-8-4(c)(3) (West 2022)) applies, which authorizes the imposition of consecutive sentences if a person charged with a felony commits a separate felony while on pretrial release or in pretrial detention in a county jail facility.

¶ 19    On November 17, 2023, Attorney Heflin filed a motion to reconsider the sentence and a motion to vacate the jury verdict and for a new trial on behalf of Goss. On November 21, 2023, the State filed a response to the motion to reconsider the sentence and a motion to strike the motion

8

to vacate. On November 22, 2023, Goss filed a *pro se* notice of appeal. On November 27, 2023, the petitions were called for hearing. The motion to strike was granted and the motion to reconsider was denied. On November 28, 2023, an amended notice of appeal was filed.

¶ 20                                    II. ANALYSIS

¶ 21    Goss first argues that the trial court erred by failing to conduct a *Krankel* hearing based on his complaints to the trial court regarding Attorney Heflin. He contends that he repeatedly raised his issues about Attorney Heflin in pleadings and in person at the sentencing hearing, and that once the claims were made regarding the ineffectiveness, the trial court should have conducted an inquiry of Goss.

¶ 22    When a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel, Illinois courts follow the common-law procedure as it has evolved from *Krankel*, 102 Ill. 2d 181. *People v. Ayres*, 2017 IL 120071, ¶ 11. More specifically, when a defendant raises a claim of ineffective assistance of counsel, the trial court should examine the factual basis of the defendant's claim. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Id.*

¶ 23    Here, the State concedes, and we agree, that the trial court should have conducted a *Krankel* inquiry into defendant's claims. Goss made several allegations via pretrial filings and in court during the sentencing hearing. Goss claimed Attorney Heflin violated attorney/client privilege and tampered with evidence. He argued that Attorney Heflin has a friendship with the victim in this matter. He claimed that Attorney Heflin misrepresented facts and accused Attorney Heflin of covering up misconduct on the part of the State. Goss and his family reported Attorney Heflin to

9

the ARDC. During the sentencing hearing, he asserted that Attorney Heflin "harmed" him and violated attorney/client privilege by repeating information that Goss told him. The allegations made by Goss are serious and were made numerous times. The trial court was aware of Goss's complaints, as Goss addressed the trial court on March 31, 2023, May 12, 2023, and August 25, 2023, regarding his issues with Attorney Heflin. The trial court even acknowledged that it read Goss's numerous filings. However, when Goss again mentioned his complaints about Attorney Heflin at the sentencing hearing, the trial court did not conduct any inquiry. Some interchange between the trial court and counsel regarding the facts and circumstances concerning the claims of ineffective assistance is usually necessary. *Moore*, 207 Ill. 2d at 78. Additionally, it is common for a discussion to occur between the trial court and the defendant regarding the claims. *Id.* "[T]he inquiry is not burdensome upon the circuit court, and the facts and circumstances surrounding the claim will be much clearer in the minds of all involved when the inquiry is made just subsequent to trial or plea, as opposed to years later on appeal." *Ayres*, 2017 IL 120071, ¶ 21. Here, no posttrial discussion was had with Goss regarding his allegations.

¶ 24 Even though Goss did not specifically include the words "ineffective assistance of counsel" in his filings or during the sentencing hearing, the allegations raised by Goss were sufficient to raise a *Krankel* inquiry. A defendant is not required to file any specific motion; simply a letter or note to the court will suffice. *Id.* ¶ 11; *People v. Patrick*, 2011 IL 111666, ¶ 39; *People v. Munson*, 171 Ill. 2d 158, 200 (1996). Goss's filings and statements during the sentencing hearing contained multiple allegations against Attorney Heflin and were sufficient to trigger a *Krankel* inquiry. See *Ayres*, 2017 IL 120071, ¶ 24 ("The purpose of the preliminary inquiry is to ascertain the underlying factual basis for the ineffective assistance claim and to afford a defendant an opportunity to explain and support his claim."). We agree with the parties that the trial court did not conduct the required

10

inquiry pursuant to *Krankel* and remand this cause to the trial court for a preliminary *Krankel* inquiry.

¶ 25    In light of our decision to remand for a *Krankel* hearing, we will not address defendant's other claims on appeal. Those issues may become moot depending on the result of the *Krankel* hearing.

¶ 26                                    III. CONCLUSION

¶ 27    For the foregoing reasons, we remand for the trial court to conduct an inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel.

¶ 28    Remanded with directions.