NOTICE
Decision filed 09/23/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240914-U

NO. 5-24-0914

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 23-CF-128 |
| | ) | |
| JAMONTE M. HILL, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice McHaney and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in finding the defendant's second *Krankel* motion moot after the appointment of new counsel, when the appointment of counsel was not in response to a proper *Krankel* inquiry.

¶ 2                                I. BACKGROUND

¶ 3    On December 13, 2023, a jury found the defendant, Jamonte M. Hill, guilty of attempted first degree murder. At trial, the defendant was represented by public defender Elisabeth Pollock. On August 15, 2024, the trial court sentenced him to 56 years' imprisonment.

¶ 4    On January 2, 2024, the defendant mailed the trial court a letter which stated it was a "Krankel letter detailing how my attorney was ineffective and rendered me a fair [*sic*] trial," and set forth 15 claims of ineffective assistance of trial counsel. According to the defendant, trial counsel (1) failed to file a motion to suppress evidence that was obtained from the defendant's

1

cell-phone records where those records were obtained pursuant to search warrants that were not supported by probable cause; (2) failed to file a motion to quash the defendant's arrest; (3) failed to "bring up" to the jury that the victim's vehicle was actually chasing the suspect's vehicle; (4) failed to object to the State's improper comments, during closing arguments, about the defendant's text messages; (5) failed to request a *Prim* instruction (*People v. Prim*, 53 Ill. 2d 62 (1972)) when the jury informed the judge that it could not reach a unanimous decision; (6) failed to object to trial witness Nathanael Epling's testimony concerning the out-of-court verification of a nontestifying fingerprint expert, and failed to object to stipulated evidence; (7) failed to object to witness Epling's "perjured" testimony concerning the number of latent fingerprints that were suitable for examination; (8) failed to "raise [the] issue" that the defendant's fingerprints were found on the passenger side of the vehicle; (9) failed to strike juror number 9, as the defendant had told trial counsel to do; (10) failed to "bring up" the trial prosecutor's coercing Keshawn Brown's alibi witness (Niya Garrett) in the hallway prior to testifying; (11) failed to request a mistrial after the jury asked whether they could go home for the day due to an inability to reach a verdict; (12) failed to pursue a motion *in limine* barring testimony about the defendant's being a bad person or possessing weapons on prior occasions unrelated to the instant incident; (13) failed to file a motion to dismiss the indictment on the grounds that the prosecutor had permitted witness Cully Schweska to perjure himself before the grand jury; (14) failed to file a motion to dismiss the charges due to a *Brady* violation (*Brady v. Maryland*, 373 U.S. 83 (1972)) where the State disclosed evidence three days before trial; and (15) failed to file a motion to dismiss due to a statutory speedy-trial violation where the State had obtained a continuance under "false pretenses" relating to the completion of DNA testing.

¶ 5    On January 19, 2024, the trial court held a preliminary *Krankel* inquiry (*People v. Krankel*, 102 Ill. 2d 181 (1984)), questioning the defendant and trial counsel about those claims, and concluded that none of the claims had merit. Also at this hearing, the defendant indicated he would like to proceed *pro se* for posttrial motions. However, after admonishments from the trial court, the defendant indicated he would like to proceed with attorney Pollock representing him.

¶ 6    On January 26, 2024, the defendant, through counsel, filed a motion for judgment notwithstanding the verdict, or alternatively, for a new trial. A hearing was scheduled on this motion for January 31, 2024. At the beginning of the hearing, the defendant indicated that he would like to proceed *pro se* and was again admonished by the trial court. After the admonitions, the defendant indicated that he would like to represent himself and have standby counsel appointed. At the conclusion of the hearing, attorney Pollock's appointment as counsel for the defendant was vacated. The trial court denied the defendant's request for standby counsel, and the defendant proceeded *pro se* in posttrial proceedings.

¶ 7    On May 29, 2024, a sentencing hearing was held. At the beginning of the hearing, the defendant was admonished regarding proceeding to sentencing *pro se*. Following the admonitions, the defendant requested that counsel be appointed to assist him. The trial court reappointed the public defender's office to represent the defendant and noted that Pollock would make the decision as to who within the public defender's office would represent the defendant. The defendant's sentencing hearing was continued.

¶ 8    After the re-appointment order was entered for the public defender's office to represent the defendant, the public defender's office indicated it had a conflict of interest and the appointment was vacated. Attorney Brian King was appointed to represent the defendant on May 30, 2024.

¶ 9   On July 1, 2024, the defendant mailed the trial court a second letter complaining about trial counsel, Pollock's, ineffectiveness, this time presenting three claims. According to the defendant, trial counsel (1) failed to require the State to establish that it exercised due diligence in obtaining results of DNA testing that was material to the case, and failed to file a motion to dismiss the charge due to a speedy-trial violation; (2) failed "to bring up the fact that the only person named as a shooter in this case [*sic*]. Girlfriend provided detectives with a cell phone number and detectives did not get a warrant for this phone"; and (3) failed "to bring up the fact that the only eyewitness to this case told a private investigator working with the Champaign [County] public defender's office that she saw me and the person she named as the shooter together in the suspect's vehicle." In regard to this third claim, the defendant wrote that the jury "never heard" about the eyewitness's statement to the private investigator, and this statement was "the only evidence placing the person the witness named as the shooter in the car." Two of these claims had not previously been presented to the trial court.

¶ 10   The court did not hold a preliminary *Krankel* inquiry regarding the defendant's most recent filing. Instead, the trial court entered a written order on July 5, 2024, finding, *inter alia*, that "[s]ince new counsel has already been appointed the request for a *Krankel* hearing is moot." The trial court denied the request for a *Krankel* hearing due to mootness. The defendant appealed.

¶ 11                                  II. ANALYSIS

¶ 12   The defendant argues on appeal that the trial court's denial to hold a *Krankel* hearing was erroneous. The State confesses error.

¶ 13   When a criminal defendant was represented by counsel at a trial that ended in a guilty verdict, and the defendant then complained to the trial court that his counsel was negligent or otherwise provided ineffective assistance, the trial court must handle the defendant's complaint

4

according to the procedure developed by our supreme court in *Krankel* and its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34. This procedure encourages the trial court to "fully address" the defendant's ineffectiveness claims, thereby narrowing the issues on appeal. *Id.*

¶ 14　When a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel, the trial court must conduct "some type of inquiry into the underlying factual basis, if any," of that claim. *People v. Moore*, 207 Ill. 2d 68, 79 (2003). The inquiry must be "sufficient to determine the factual basis of the claim." *People v. Banks*, 237 Ill. 2d 154, 213 (2010). As part of its inquiry, the court may discuss the claims with the defendant and with trial counsel. *People v. Jolly*, 2014 IL 117142, ¶ 30. If the trial court determines that the defendant's claim shows "possible neglect of the case," the court should appoint new counsel for the defendant. *Moore*, 207 Ill. 2d at 78.

¶ 15　New counsel, who can independently evaluate the claim without the danger of a conflict of interest, would then represent the defendant at a hearing on the *pro se* ineffectiveness claim. *Id.* However, "[i]f the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Id.* This procedure "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. At a preliminary *Krankel* inquiry, the trial court should consider both the factual merits of the defendant's claim and the legal merits. *Roddis*, 2020 IL 124352, ¶¶ 50, 61. This approach "serves both the ends of justice and judicial economy." *Id.* ¶ 61.

¶ 16　"The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *Moore*, 207 Ill. 2d at 78. "By initially evaluating the defendant's claims in a preliminary *Krankel* inquiry, the [trial] court will create the necessary record for any claims raised on appeal." *Jolly*,

2014 IL 117142, ¶ 38; see also *Moore*, 207 Ill. 2d at 81 (failure to conduct preliminary *Krankel* inquiry precludes appellate review). Whether the trial court properly conducted a preliminary *Krankel* inquiry is a legal question that this court reviews *de novo*. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 17   When the defendant filed his second *Krankel* motion on July 1, 2024, he raised claims that were not included in his earlier motion. Therefore, the trial court should have conducted a preliminary *Krankel* inquiry. Not conducting one was error. The first claim in the second motion— *i.e.*, that trial counsel had failed to require the State to establish that it had exercised due diligence in obtaining material DNA results, and in failing to file a motion to dismiss on statutory speedy-trial grounds—was almost the same as the claim previously presented to the court as claim number 15 of the defendant's first *Krankel* motion, filed on January 5, 2024. The trial court properly addressed and dealt with that claim at the first preliminary *Krankel* inquiry on January 19, 2024. However, the second and third claims in the *Krankel* letter were new to the trial court, and they deserved a preliminary *Krankel* inquiry.

¶ 18   The second claim in the second *Krankel* motion is difficult to decipher; it may concern Keshawn Brown and his girlfriend, Niya Garrett. However, this uncertainty is not fatal to the claim at this point. "[T]he primary purpose of the preliminary [*Krankel*] inquiry is to give the defendant an opportunity to flesh out his claim of ineffective assistance so the court can determine whether appointment of new counsel is necessary." *People v. Ayres*, 2017 IL 120071, ¶ 20. An express claim of ineffective assistance, without any factual allegations or specific examples, is enough to trigger the trial court's duty to perform a preliminary *Krankel* inquiry. *Id.* ¶ 19. This second claim of ineffective assistance was enough to warrant a *Krankel* inquiry.

¶ 19   The third claim in the second *Krankel* motion is important to the case. The defendant claimed that trial counsel failed to present evidence that would have bolstered his defense. The

6

defendant contends that Alyssa Dodd told a private investigator that she had seen the defendant and Keshawn Brown, together, in a white Toyota. Such evidence, if true, may have bolstered the defense theory that Keshawn Brown and the defendant were together in the white Toyota, with Brown as the driver and the defendant as the passenger, when Brown got out of the Toyota and repeatedly shot at Dodd's car. This third claim of ineffective assistance certainly deserved a preliminary *Krankel* inquiry.

¶ 20    The trial court, in its written order of July 5, 2024, explained why it had denied as moot the defendant's request for a second *Krankel* inquiry. The purpose of a *Krankel* inquiry, the court stated, "is for the court to determine if the allegations show possible neglect of the case and if so to appoint new counsel. *** Since new counsel has already been appointed the request for a *Krankel* hearing is moot." The court was correct in stating the purpose of a *Krankel* inquiry. See *Patrick*, 2011 IL 111666, ¶ 39; *Moore*, 207 Ill. 2d at 78. However, as the State concedes in its appellee's brief, the appointment of new counsel, attorney Brian King, had nothing to do with *Krankel* procedures. As the State stated, King "was never appointed to assist the defendant [with] any posttrial ineffective assistance claims." The court did not determine whether the allegations in the second *Krankel* motion showed possible neglect by trial counsel, and King was not appointed to represent the defendant at a hearing on the *pro se* ineffectiveness claims.

¶ 21                                III. CONCLUSION

¶ 22    For the foregoing reasons, this court reverses the trial court's order denying, as moot, the defendant's request for a second *Krankel* inquiry. This court remands this cause for a preliminary *Krankel* inquiry on the claims contained in the defendant's second *Krankel* motion, and whatever other claims he may choose to raise.

¶ 23    Reversed and remanded.

7