NOTICE
Decision filed 06/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240614-U

NO. 5-24-0614

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 23-CF-3 |
| | ) | |
| LANCE M. DAVIDSON, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justice Sholar concurred in the judgment.*

**ORDER**

¶ 1    *Held*:  We affirm the defendant's sentence where the defendant has forfeited the issue of whether he was forced to proceed *pro se* during postsentencing proceedings, but remand this matter for an inquiry into the defendant's claims of ineffective assistance of counsel.

¶ 2    On May 23, 2023, the defendant, Lance M. Davidson, was found guilty after a jury trial of tampering with a security fire or life safety system in violation of section 17-11.5(a) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/17-11.5(a) (West 2022)). The defendant proceeded *pro se* throughout his jury trial, but requested and was appointed counsel for sentencing. After sentencing, the defendant filed a *pro se* motion to reconsider sentence which his appointed counsel

_____

*Justice Moore also fully participated in this case prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

declined to adopt. The trial court allowed the defendant to proceed *pro se* on that motion. The defendant now claims that he was forced to proceed *pro se* at a critical stage of the proceedings without a knowing, intelligent, or voluntary waiver of his right to counsel. The defendant also claims that the trial court failed to address his posttrial claims of ineffective assistance of counsel. For the following reasons, we affirm the defendant's sentence but remand this matter for a *Krankel*[1] inquiry.

¶ 3                                    I. BACKGROUND

¶ 4      The defendant was charged by information on January 5, 2023, with one count of tampering with a security fire or life safety system in violation of section 17-11.5(a) of the Criminal Code (*id.*), a Class 4 felony. The charge alleged that on January 3, 2023, the defendant knowingly sabotaged or temporarily malfunctioned a security camera in the Montgomery County jail. The defendant was appointed counsel, Katherine Drummond, on January 5, 2023. At the time of her appointment in this case, Drummond was already representing the defendant in another case pending before the trial court, People v. Davidson, No. 22-CF-310 (Cir. Ct. Montgomery County) (second case). Drummond had also represented the defendant in another pending case, People v. Davidson, No. 22-CF-262 (Cir. Ct. Montgomery County) (third case), until he elected to proceed *pro se* in that case.

¶ 5      We note that many of the documents and pleadings in this case were filed in all three cases even where the filing applied to only one of the cases. We further note that all three cases were addressed in the majority of the hearings conducted by the trial court. As such, we will reference

---

[1]Hearings investigating *pro se* claims of ineffective assistance of counsel held pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, are commonly referred to as *Krankel* hearings or *Krankel* inquiries.

the other cases as needed to clarify or give context to a filing, argument, or finding by the trial court, but make no comments nor offer any opinions regarding the merits of the other cases.

¶ 6    On January 6, 2023, the defendant, through counsel, filed a speedy trial demand and a motion for discovery. On January 10, 2023, the defendant filed a *pro se* speedy trial demand and a motion for discovery. He also filed a *pro se* motion to remove appointed counsel. The motion to remove counsel stated that the defendant did not want court-appointed counsel, that counsel had previously been removed from the third case, and that the defendant had a right to self-representation. The trial court conducted a status hearing on January 11, 2023, and addressed the defendant's motion to remove counsel. The defendant requested additional time to consider the issue of representation, and the trial court granted that request.

¶ 7    Another status conference was held on January 18, 2023, and the trial court again addressed the defendant's request to proceed *pro se*. The defendant stated that he stood on his motion to have appointed counsel removed and that he wanted to proceed *pro se*. The trial court admonished the defendant concerning proceeding *pro se* and ensured that the defendant had sufficient time to consult with appointed counsel prior to making his decision on representation. The defendant acknowledged all of his rights, indicated that he had no questions, and again stated that it was his desire to represent himself. The trial court stated that they had "been down this road multiple times, both you representing yourself and requesting counsel." The trial court cautioned the defendant that he had "a right to represent yourself to your own peril" and that having a skilled, experienced attorney would be in the defendant's best interest. The trial court again confirmed that the defendant wanted to proceed *pro se*, found the waiver to be knowingly and voluntarily made, and then granted the defendant's motion.

3

¶ 8    On February 13, 2023, the defendant filed a motion for counsel which stated, "Please appoint Erin Mattson to my cases ***." The trial court addressed the defendant's motion at a hearing on February 15, 2023. The trial court informed the defendant that he did not have a right to the appointment of a specific public defender. The trial court advised the defendant that if he wanted to proceed with counsel, Drummond would be reappointed since she had previously represented the defendant through one trial and had not been relieved based on any fault or allegation of fault. The State also informed the trial court that Mattson, whom the defendant had requested, would have a conflict and could not be appointed to represent the defendant. The defendant then stated as follows:

> "I would ask for appointed counsel and just ask to note that I'm making the claim that Miss Drummond would not adopt my post-trial motions [in the third case] as she did not agree with me. So I would just—I would be requesting to preserve those."

¶ 9    The trial court informed the defendant that he was entitled to counsel, but was "not entitled to an attorney that agrees with everything you want." The trial court went on to explain that attorneys have ethical obligations and limitations, and that the defendant did not have the right to have the trial court "keep appointing attorneys until you find someone who agrees to do it your way." The trial court granted the defendant's motion, and Drummond was reappointed as counsel in this case and the defendant's third case.

¶ 10    A jury trial was conducted on April 24, 2023, and the defendant was represented by Drummond throughout the trial. The jury was unable to reach a unanimous decision and a mistrial was declared. The matter was set to be retried on May 23, 2023. On May 22, 2023, the defendant filed a motion to remove counsel. The trial court held a hearing via Zoom the same day and the

4

defendant confirmed that he wanted to proceed *pro se*. The trial court reminded the defendant that the second jury trial was scheduled for the following morning and again admonished the defendant on the offense, the potential punishment, and his right to counsel. The defendant confirmed his rights, and stated that he was prepared for trial. The trial court stated that there would be a waiver for the defendant to sign and that it would be taken care of the next morning prior to trial.

¶ 11    A second jury trial was conducted on May 23, 2023. Prior to the start of the trial, the trial court again admonished the defendant concerning proceeding *pro se*, and the defendant again confirmed his desire to represent himself at trial. The defendant represented himself at the second jury trial and upon completion of the evidence, the jury found the defendant guilty of knowingly sabotaging or temporarily malfunctioning a security camera in the Montgomery County jail.

¶ 12    On June 1, 2023, the defendant filed a motion for transcripts and an objection to the notice of arrest being admitted into evidence at trial. He also filed a document titled "Counsel" in all three cases that stated that "Court appointed counsel, Katherine Drummond, is not communicating with me about sentencing and trial strategy. She has not made reasonable effort to communicate with my witnesses in my favor." Although filed in all three cases, as previously noted, the defendant was not represented by Drummond at his second jury trial nor at the time of the "Counsel" filing.

¶ 13    A hearing was conducted on June 2, 2023, for status in this matter, pretrial in the second case, and sentencing in the third case. At the hearing, the trial court addressed the defendant's "Counsel" filing. The defendant withdrew that pleading from the third case and the trial court proceeded with a sentencing hearing with the defendant represented by Drummond.

¶ 14    Upon the completion of sentencing in the third case, the defendant requested counsel, other than Drummond, be appointed to represent him for sentencing in this case. The trial court again addressed the defendant's "Counsel" filing and found that the defendant had not shown a basis for

5

a claim of ineffective assistance of counsel. The trial court once again informed the defendant that he did not have a right to request a specific counsel and that if counsel was desired for sentencing in this matter, Drummond would be reappointed. The defendant then stated that he was requesting court-appointed counsel for sentencing and the trial court reappointed Drummond. The trial court set a date for sentencing and noted that it would also address the pretrial on the second case at that time. The defendant then withdrew his "Counsel" filing as to the second case.

¶ 15 The defendant filed a *pro se* notice of appeal on June 7, 2023. The notice of appeal stated that the defendant was appealing the jury's guilty verdict of May 23, 2023. On June 8, 2023, the defendant filed a "Request for Investigation." The request for investigation was filed in the trial court and copied the Illinois Attorney Registration and Disciplinary Commission with a note that stated, "copy to be mailed for review." The request for investigation stated that "Katherine Drummond was appointed for defense counsel, but she improperly prosecuted me." The request also stated "pro se litigant, requesting conflict counsel to assist me, argue my claims against Katherine Drummond." Based on the defendant's request for investigation, Drummond filed a motion to withdraw in all of the defendant's cases on June 9, 2023.

¶ 16 The trial court conducted a hearing on Drummond's motion to withdraw on July 7, 2023. At the hearing, the defendant requested that the trial court address any motions filed by Drummond prior to allowing her to withdraw. The trial court denied that request and granted Drummond's request to withdraw. The trial court then went through the status of each case. It noted that this case was pending sentencing, the second case was pending trial, and that sentencing had been completed in the third case. The trial court confirmed that the defendant was still requesting counsel for sentencing in this matter and appointed Mattson to represent the defendant. The defendant objected, noting the previous stated conflict, and the State agreed that Mattson would

6

have a conflict. As such, the trial court appointed Wesley Poggenpohl. The defendant noted that Poggenpohl was a former prosecutor, but did not make any objection to his appointment.

¶ 17    At a status hearing on August 7, 2023, the defendant stated he wanted to proceed *pro se* in his second case and that he objected "to Mr. Poggenpohl representing me on any of these cases." The trial court instructed the defendant to file a written motion setting out his allegations regarding counsel and denied his oral request to have Poggenpohl removed from all of his cases.

¶ 18    On August 11, 2023, the defendant filed a *pro se* motion for substitution of judge. The motion argued that the trial judge appointed Poggenpohl over the defendant's objection, denied the defendant's right to proceed *pro se*, and violated the defendant's right to a speedy trial. The defendant also filed a motion to disqualify Poggenpohl on the same day. That motion alleged that Poggenpohl had served as a prosecutor and that the "attorney-client relationship is damaged by irreconcilable difference." The motion referenced a "Request for Investigation" that was also filed that day. The request for investigation was a form document from the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois and was completed by the defendant. It requested an investigation into Poggenpohl alleging that he could not represent the defendant due to Poggenpohl being a former prosecutor and that "[b]etween 16-CF-25 and 18-CF-78, Wes Poggenpohl made over 43 court appearances as Prosecutor (Assistant States Attorney of Montgomery County) against me—those cases were sought for incarceration."

¶ 19    On September 15, 2023, the trial court, with a different judge presiding, conducted a hearing on the defendant's *pro se* motion for substitution of judge. The defendant's counsel, Poggenpohl, declined to adopt the defendant's *pro se* motion for substitution of judge. The trial court noted that generally, the *pro se* motion would be stricken since the defendant was represented by counsel; however, given that there was a pending motion to disqualify defense counsel, the

defendant was permitted to argue the motion. The defendant stated that the judge was biased and had entered a sentence that was not permitted by law because it was outside of the sentencing range for the offense. The trial court noted that even if the sentence was in error, that matter was on appeal and did not demonstrate bias. The defendant then argued that the judge ignored the defendant's objection to Poggenpohl being appointed since Poggenpohl had a conflict of interest as a former prosecutor. When asked if there was any other factual basis for bias, the defendant stated, "That's it." The trial court found that the defendant had not established any bias and denied the defendant's request for substitution of judge. It further held that the initial judge would hear the defendant's motion to disqualify defense counsel.

¶ 20     On October 3, 2023, the trial court, with the initial judge presiding, conducted a hearing on the defendant's motion to disqualify Poggenpohl as counsel and to proceed *pro se*. The trial court went through all the admonishments again, including the offenses charged, the potential punishments, and the right to counsel in both pending cases. The trial court also confirmed that the defendant had represented himself at trial in the current matter; his age; that he had no mental or physical disabilities; that he could read, write, and understand the English language; and that he understood his rights to have an attorney appointed. The trial court also extensively went through the disadvantages in self-representation and the advantages to having an experienced, trained attorney. The defendant acknowledged his rights and understanding, and then stated that he still desired to proceed *pro se*. The trial court advised the defendant that "once you decide that you want to proceed without an attorney, you made that election and you don't necessarily need to get another attorney appointed for you. Do you understand that?" The defendant stated, "Yes, Your Honor." The trial court then granted the defendant's motion, vacated Poggenpohl's appointment, and set the matter for sentencing on November 14, 2023.

8

¶ 21    On November 9, 2023, the defendant filed a motion to appoint counsel. The motion stated that the defendant could "not obtain legal materials efficiently, to prepare a defense through the prison library." The matter was called for sentencing on November 14, 2023, and the defendant indicated that he had not yet received the presentence investigation report (PSI). The trial court noted that the defendant had filed a motion for counsel and the defendant acknowledged that he would like counsel to be appointed. The defendant stated that he was unable to get his subpoenas issued because he had limited access to materials. The defendant informed the trial court that he was requesting counsel for sentencing in this matter, but wanted to remain *pro se* in the other pending case.

¶ 22    The trial court reappointed Poggenpohl for sentencing and the State provided the defendant with a copy of the PSI, noting that it had been filed on November 2, 2023. The matter was reset for sentencing on December 14, 2023. On December 8, 2023, the defendant, through counsel, filed a motion for new trial. The motion for new trial argued that the defendant did not have sufficient time to consult with his appointed counsel at the May 22, 2023, hearing on his motion to proceed *pro se* at the second trial. The motion further alleged that hearing was conducted via Zoom in violation of Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), that the defendant did not fully understand the repercussions of going to trial *pro se*, and that the defendant did not understand the 30-day requirement for filing a posttrial motion.

¶ 23    On December 13, 2023, the defendant, through counsel, filed a motion to continue the sentencing hearing. The next day, the defendant filed a *pro se* "Objection" which stated that the defendant objected to Poggenpohl representing him at any proceeding. The "Objection" also requested that Poggenpohl be removed as counsel due to an alleged conflict of interest because Poggenpohl, as a prosecutor, had "made over 43 court appearances against the defendant." As

9

such, the "Objection" requested "appointment of substitute counsel or self-representation would be better than conflicting interest." The case was called for sentencing and over the State's objection, the trial court granted the continuance.

¶ 24 The matter was called on January 10, 2024, to address the motion to continue, the "Objection" to Poggenpohl as defense counsel, the motion for new trial, and sentencing. At the beginning of the hearing, Poggenpohl stated that the defendant was making an oral motion to continue the sentencing hearing until after the trial was completed in the other pending case. The State objected. The trial court went through the lengthy procedural history of the defendant requesting counsel, removing counsel, and then requesting counsel again, causing numerous delays. The trial court noted that sentencing had been scheduled for seven and a half months and as such, denied the defendant's motion to continue sentencing.

¶ 25 The trial court then asked the defendant if he wanted to address his *pro se* "Objection." The defendant argued that Poggenpohl had over 43 court appearances where he had engaged in the prosecution of the defendant in 2018. The defendant also stated that he did not know whether the issue "may become moot" depending on what the State asked for at sentencing. The trial court once again stated that Poggenpohl was an assistant state's attorney prior to this case being filed and that Poggenpohl had not been employed in that office during the pendency of this case. As such, the trial court denied the defendant's "Objection" to remove Poggenpohl and substitute counsel. At no point did the defendant request to proceed *pro se*.

¶ 26 The trial court then went on to address the defendant's motion for new trial. In support of that motion, the defendant testified on his own behalf. The defendant stated that he had previously been represented by Drummond and had moved the trial court to remove her as counsel. The defendant testified that the hearing on the motion to remove counsel was done remotely with the

10

defendant appearing from the Montgomery County jail. At the hearing, the defendant stated that the trial court informed him that there would be a form for him to complete regarding the waiver of counsel, but that the form was not given to him by the State until the day of trial when Drummond was not present. The defendant testified that he believed Drummond would be present, so he refused to sign the waiver because he wanted to speak with Drummond. The defendant stated that if his request for a new trial was granted, he would be represented by an attorney during the new trial. The defendant also testified that he did not understand that he only had 30 days in which to file any posttrial motions.

¶ 27    Upon cross-examination, the defendant admitted that he had requested to proceed *pro se* more than five times during the pendency of this case and had actually represented himself at major hearings. The defendant also admitted that the trial court had inquired, before the start of the trial, whether he was certain that he wanted to proceed *pro se* and that he had, again, confirmed his intention to proceed *pro se*.

¶ 28    The defendant was the only witness and upon the completion of his testimony, the trial court heard arguments. Defense counsel argued that the trial court did not comply with Illinois Supreme Court Rule 401 (eff. July 1, 1984), since it failed to have the defendant sign a waiver of counsel, and failed to have the waiver hearing conducted in open court since the defendant appeared via Zoom. Also, because the defendant was on Zoom, defense counsel argued that the defendant was not allowed an opportunity to speak privately with his appointed counsel prior to counsel being dismissed from the case. As such, defense counsel argued that there was no substantial compliance with Rule 401 and that the defendant should be granted a new trial where he could be represented by counsel.

¶ 29 The State argued that on the day prior to trial, the defendant was admonished as to the nature of the charge, the possible penalties, and his right to counsel. The State also argued that, by his own admission, the defendant was again admonished prior to the start of trial, which occurred in person in open court. The State also noted that there was no requirement for a written waiver and as such, argued that the trial court fully complied with Rule 401. Upon completion of arguments, the trial court denied the defendant's motion for a new trial.

¶ 30 The trial court then proceeded to a sentencing hearing and sentenced the defendant to three and one-half years' incarceration in the Illinois Department of Corrections, to be followed by six months of mandatory supervised release. The sentence was to be served consecutive to the 50 months of incarceration and 4 years of mandatory supervised release sentence imposed in the third case. The defendant was then fully advised of his appeal rights. The State moved to dismiss the defendant's second case, and the trial court granted the dismissal.

¶ 31 On January 23, 2024, the defendant filed a "Pro Se Appearance" in all three cases. He also filed an "Objection" and a "Post-Judgement" motion in this case. The objection stated that prior to sentencing, the defendant had made a verbal objection to Poggenpohl representing him and that "[t]his was not a Krankel Hearing for ineffective assistance of counsel, it was my objection to his representing me due to him being a former prosecutor." The objection further stated that the defendant should have been allowed to proceed *pro se* and should be granted a new sentencing hearing.

¶ 32 The document titled "Post-Judgement" motion stated, in its entirety, as follows:

> "I wish to file *Motion for New Trial, Motion to Reconsider Sentence*. It is
> my intent to file a *Notice of Appeal* but the aforementioned motions may be struck
> by the Court.

12

Please preserve my rights to appeal by allowing a *Motion to Continue* for appeal rights to a *Notice of Appeal* until the other post-trial motions are presented." (Emphases in original.)

¶ 33 The trial court called all three cases for hearing on February 6, 2024. At the beginning of the hearing, the State clarified that the defendant had made a *pro se* filing that stated he would be filing a motion for new trial and a motion for reconsideration of the sentence but noted that he had not done so. The State further noted, however, that the defendant was still within his 30 days to do so. The State also indicated that the defendant had requested to proceed *pro se* and "that's what he wishes to do he has a right to do that now if he wishes to."

¶ 34 The trial court then inquired whether the defendant intended on filing a motion and the defendant stated that "[i]t would be my intent to see if Mr. Poggenpohl finds any of them to have merit, he would raise those, but my desire would be for a new trial and if denied a motion to reduce sentence." At this point, both the State and Poggenpohl asked for clarification on whether the defendant wanted to proceed *pro se* or have Poggenpohl represent him for postsentencing motions. The following dialog then occurred:

"THE COURT: Okay. All right. So, [the defendant], you have heard the confusion here. You have filed a *pro se* entry of appearance. You plan on proceeding without counsel or do you want Mr. Poggenpohl to represent you?

THE DEFENDANT: I mean, at this time I don't even know what Mr. Poggenpohl's stance is if he even agrees with any of my allegations.

THE COURT: And if you are going *pro se* that would not matter. If you want Mr. Poggenpohl to represent you then, of course, you will want to talk with him. He will want to talk with you. So do you want him to represent you?

13

THE DEFENDANT: I mean, I—if he is not going to file a motion for new trial then I would have to do that on myself to preserve that issue. I don't know if a notice of appeal has been filed, but I think that would be premature if the motion for new trial was filed so I guess—and I guess it all depends—

MR. POGGENPOHL: I can answer that. I am not filing a motion for new trial because we did that prior to the sentencing hearing and it was denied. So if you are wanting to rehash that issue that's not a motion I am going to file."

¶ 35    There were additional discussions between the trial court and the defendant regarding the defendant's filings. At one point, the defendant indicated that it was his intention that the filing of the "Objection" was a motion for a new sentencing hearing. As such, the trial court agreed to schedule that motion for hearing and asked whether the defendant would be proceeding *pro se* on that motion. The defendant then asked whether Poggenpohl was willing to adopt that motion to which Poggenpohl, understandably, responded with some confusion since the basis of that motion was the defendant's argument that Poggenpohl had a conflict and should have been removed. Poggenpohl also informed the trial court that the defendant had made it clear that he did not want Poggenpohl to represent him. Poggenpohl further stated that he would not adopt that motion and the defendant stated that he would argue the motion. The defendant also indicated to the trial court that he intended to file a motion for a new trial and asked for additional time to file a notice of appeal. The trial court informed the defendant that it could not grant additional time to file an appeal, but that the defendant still had time to perfect an appeal.

¶ 36    The defendant filed an affidavit on February 12, 2024. Within the affidavit, the defendant stated that it was his belief that appointed counsel was required to file the notice of appeal and that he was asking for assistance to argue the ineffectiveness of Katherine Drummond and Wesley

14

Poggenpohl. The affidavit further stated that it was Poggenpohl's duty to file any posttrial motions and that Poggenpohl "refuses not only to assist me but at least to consult with me." The affidavit stated that a notary was not available, so the affidavit was not sworn. The same day, the defendant filed a notice of appeal of the January 10, 2024, "conviction, sentence." The notice of appeal also stated that the offense of which the defendant was convicted was "victim of Montgomery County."

¶ 37     On March 7, 2024, the trial court conducted a hearing on the defendant's "Objection" which the defendant had previously indicated was a motion to reconsider sentence. The defendant appeared *pro se* and stated that he had not heard "anything back from Counsel, and I still am waiting on sentencing hearing transcripts."

¶ 38     The trial court noted that the defendant had filed a notice of appeal and asked the defendant if it was his intention to pursue the motion to reconsider or the notice of appeal. The defendant indicated that he wanted to argue the motion to reconsider, but could not effectively argue the motion since the transcripts he received covered the trial, but did not contain *voir dire* or some of the statements at the beginning of the trial. The trial court then stated that it was striking the notice of appeal and informed the defendant that he would have 30 days after the ruling on his motion to reconsider to file a notice of appeal.

¶ 39     The trial court conducted a hearing on the defendant's motion to reconsider sentence on May 6, 2024. The transcript states that the defendant appeared *pro se*, but also indicates that Poggenpohl appeared at the hearing. The defendant appeared remotely and when asked whether he was ready to proceed, indicated that there were no witnesses present. The defendant further indicated that the majority of his argument was based on witnesses. The trial court explained that there would not be witnesses at the motion hearing, but if a new sentencing hearing was granted, the defendant could call witnesses at that time. The defendant then stated that there was "some

15

misunderstanding" and asked to speak with Poggenpohl. The defendant consulted with Poggenpohl and then proceeded *pro se* with his arguments.

¶ 40    Although the initial "Objection" that was reclassified into the motion to reconsider was based on Poggenpohl representing the defendant at sentencing, the defendant argued at this hearing that if he was granted a new sentencing hearing, he could present evidence that may have not been available before. The defendant stated that he could present a "plethora of witnesses" who could provide more mitigating factors, such as their assessment of any danger that the defendant posed, and that these witnesses may be able to persuade the trial court to impose a lower sentence. The defendant further argued that the transcripts from his classes, not just the fact of the classes themselves, would have shown the good-time credit he had earned and his 4.0 grade point average. Finally, the defendant argued that his motion to continue sentencing had been denied or he would have been able to present the witnesses and transcripts at the initial sentencing hearing.

¶ 41    The trial court heard arguments from the State and upon completion of arguments, stated that it had considered the defendant's classes at sentencing and that the defendant had not presented anything that was not considered at the initial sentencing. As such, the trial court stated that it did not find any basis for a new sentencing hearing, and denied the defendant's motion for reconsideration of sentence. The defendant was informed of his appeal rights and he requested that his previous notice be reinstated. The trial court granted that request, reinstated the previous notice of appeal, and reappointed the appellate defender's office to represent the defendant on appeal. The defendant's notice of appeal was received, filed, and docketed in this court on May 7, 2024.

¶ 42    On May 20, 2024, the defendant filed an "Objection" in the trial court that stated that the May 6, 2024, docket entry indicated that the defendant appeared *pro se* but the defendant was under the impression that he was with counsel at the May 6, 2024, hearing. The objection also

16

stated that the defendant had not signed a waiver of counsel or had a hearing in compliance with Illinois Supreme Court Rule 401 (eff. July 1, 1984). The objection went on to state that "[e]ven if that was so, defendant's request to speak to his attorney of record would nullify that waiver, and reinstate his right to have the assistance of counsel."

¶ 43 On June 3, 2024, an amended notice of appeal was filed in this court. The amended notice of appeal stated that the defendant was appealing the January 10, 2024, and May 6, 2024, orders of the trial court. On January 7, 2025, the defendant filed a motion in this court to have appointed appellate counsel removed. The motion contained inappropriate language and was denied on January 9, 2025. In the order denying the motion, this court noted that the defendant had no constitutional right to self-representation on appeal and further cautioned the defendant that directing foul language towards counsel or any other agency or individual involved in this appeal would not be tolerated. We will now proceed to address the issues the defendant raises on appeal.

¶ 44                                    II. ANALYSIS

¶ 45 The defendant raises two issues for this court's consideration. The first issue is whether the trial court erred in forcing the defendant to represent himself during a critical stage of the proceedings without a knowing, intelligent, and voluntary waiver of his right to counsel. The second issue is whether the trial court erred in failing to conduct a *Krankel* inquiry into the defendant's February 12, 2024, complaint that he had received ineffective assistance of counsel from Drummond and Poggenpohl. We will address each issue in the order raised.

¶ 46                               A. Waiver of Counsel

¶ 47 The defendant first argues that he never made a clear or unequivocal waiver of his right to counsel at the February 6, 2024, hearing. The defendant also argues, in the alternative, even if he did waive counsel, he had requested counsel in his February 12, 2024, filing and the trial court

17

ignored that request, forcing the defendant to proceed *pro se* at the hearing on his postsentence motion.

¶ 48    The State argues that the defendant has forfeited any issue concerning his proceeding *pro se* at the hearing on his motion to reconsider sentence by failing to file a posttrial motion that included the arguments now raised on appeal. The State acknowledges that the claim was raised in the defendant's filing of May 20, 2024, but argues that the lower court was without jurisdiction to address the objection since the matter was already on appeal.

¶ 49    Illinois courts have long held that an issue is forfeited on appeal unless a party makes an objection at the time of the purported error and specifically raises the issue in a written posttrial motion. *People v. Bowens*, 407 Ill. App. 3d 1094, 1108 (2011). Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), however, provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The right to counsel is a fundamental and substantial right. *People v. Martin*, 2021 IL App (4th) 180267, ¶ 28. Thus, a claim that the defendant never made a clear or unequivocal waiver of his right to counsel or that counsel was not appointed when requested is reviewable under the doctrine of plain error regardless of whether the claims were brought to the attention of the lower court. This does not, however, end our analysis of whether the defendant has forfeited this issue.

¶ 50    We must also examine the issue of forfeiture under the doctrine of invited error. "[U]nder the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error." *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17. The invitation or agreement by the defendant to a procedure or course of action later challenged on appeal goes beyond mere waiver and instead, results in the forfeiture of a plain error review. *Id.* "To allow a defendant to use the exact ruling or action procured in the trial court as a

18

vehicle for reversal on appeal would offend notions of fair play and encourage defendants to become duplicitous." *Id.*

¶ 51 Here, without considering whether the defendant made a formal waiver of this right to counsel, the record clearly demonstrates that the defendant did not desire Poggenpohl to continue representing him since Poggenpohl had refused to adopt the defendant's *pro se* motion and Poggenpohl had also indicated that he would not file another motion for new trial. The defendant made no objection to proceeding *pro se*, either at the February 6, 2024, or at the May 6, 2024, hearings on his *pro se* motion to reconsider sentence. The defendant also never withdrew his *pro se* appearance nor made a formal request for counsel at either hearing. Instead, the defendant elected to proceed on his *pro se* motion and then argued that motion *pro se* without any objection or giving any indication that he was being denied counsel.

¶ 52 The purpose of requiring a criminal defendant to make an unequivocal request to waive counsel is to "(1) prevent the defendant from appealing [either] the denial of his right to self-representation or the denial of his right to counsel, and (2) prevent the defendant from manipulating or abusing the system by going back and forth between his request for counsel and his wish to procced *pro se*." *People v. Mayo*, 198 Ill. 2d 530, 538 (2002). In this matter, the defendant had proceeded numerous times with and without counsel throughout these proceedings. As such, he was familiar with the procedures of a hearing and was especially knowledgeable at requesting or terminating counsel. The record demonstrates that the defendant clearly indicated that he wanted to proceed *pro se* on his motion to reconsider sentence and we find it disingenuous for the defendant to argue now on appeal that he was forced to proceed *pro se*. Because the defendant made the election to proceed *pro se*, we find that he invited or acquiesced to the course of action that he now challenges on appeal. Accordingly, we find that under the invited error

19

doctrine, the defendant has forfeited a plain error review and thus, has forfeited this issue on appeal.

¶ 53                                B. *Krankel* Hearing

¶ 54     The defendant next argues that the trial court erred in failing to conduct a *Krankel* inquiry into the defendant's February 12, 2024, allegations of ineffective assistance of counsel by Drummond and Poggenpohl. In its briefing to this court, the State concedes this issue and agrees that this matter should be remanded to allow the trial court to conduct the required inquiry into the defendant's posttrial claims of ineffective assistance of counsel. Based upon our *de novo* review, set out below, we also agree that remand is required.

¶ 55     The *Krankel* procedure "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29. This procedure "serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." *People v. Patrick*, 2011 IL 111666, ¶ 39. The trial court must, at a minimum, conduct some type of inquiry into the underlying factual basis, if any, of the defendant's *pro se* claim. *People v. Ayres*, 2017 IL 120071, ¶ 11. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the trial court need not appoint new counsel and may deny the defendant's *pro se* claim. *Id.*

¶ 56     "The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*. *People v. Thornton*, 2024 IL App (4th) 220798, ¶ 74.

¶ 57    On February 12, 2024, the defendant filed an unsworn affidavit in which he asked for "attorney assistance to argue the ineffectiveness of Katherine Drummond and Wesley Poggenpohl." It further stated that the defendant had written two letters to Poggenpohl and that Poggenpohl "refuses not only to assist me but at least to consult with me." There are no specific allegations regarding Drummond in the affidavit; however, a claim of ineffective assistance of counsel is not required to be supported by facts or specific examples. *Ayres*, 2017 IL 120071, ¶ 19.

¶ 58    Here, the record on appeal does not demonstrate that the trial court conducted any specific inquiry into the allegations of ineffective assistance of counsel contained in the defendant's February 12, 2024, filing. Although the trial court had previously addressed counsels' performances at the numerous hearings regarding the removal or reappointment of counsel, we find that it did not specifically address the allegations of ineffective assistance of counsel in the February 12, 2024, filing.

¶ 59    Accordingly, we agree with the parties and find that the trial court erred in failing to conduct the necessary preliminary examination as to the factual basis of the defendant's allegations against his appointed counsels. Therefore, we remand this matter for the limited purpose of allowing the trial court to conduct the required preliminary investigation. If the trial court determines that the claims of ineffectiveness of counsel are spurious or pertain only to trial strategy, the trial court may deny the claims and leave standing the defendant's conviction and sentence.

¶ 60                                    III. CONCLUSION

¶ 61    For the foregoing reasons, we find that the defendant has forfeited the issue of whether he was forced to proceed *pro se* during postsentencing proceedings, but remand this matter with directions that the trial court conduct an inquiry into any factual basis of the defendant's claims of

21

ineffective assistance of counsel.

¶ 62    Affirmed and remanded with directions.